**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0459-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL D. MILLER,

    Defendant-Appellant.

| APPROVED FOR PUBLICATION |
| :---: |
| April 4, 2017 |
| APPELLATE DIVISION |

Submitted March 15, 2017 — Decided  April 4, 2017

Before Judges Fuentes, Carroll and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-05-0894.

Rudnick, Addonizio, Pappa & Casazza, attorneys for appellant (Mark F. Casazza, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Paul H. Heinzel, Senior Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

Defendant Michael Miller was charged in Monmouth County Indictment No. 13-05-0894 with fourth-degree child endangerment by possessing child pornography, N.J.S.A. 2C:24-4b(5)(b) (Count

One), and second-degree child endangerment for distributing child pornography, N.J.S.A. 2C:24-4b(5)(a) (Count Two). Following a bench trial, he was convicted of both charges. On August 14, 2015, defendant was sentenced to a seven-year jail term on Count Two, and a consecutive one-year jail term on Count One. He was also required to comply with Megan's Law, N.J.S.A. 2C:7-2, and to pay the appropriate fines, penalties, and assessments. Defendant appeals from his conviction and the sentence imposed, arguing:

> POINT I
>
> SINCE [DETECTIVE] BRUCCOLIERE WAS NOT OFFERED AND QUALIFIED AS AN EXPERT WITNESS BY THE STATE, THE TRIAL COURT ERRED IN ADMITTING INADMISSIBLE TESTIMONY.
>
> POINT II
>
> [] DEFENDANT'S CONVICTION FOR DISTRIBUTING CHILD PORNOGRAPHY WAS AGAINST THE WEIGHT OF THE EVIDENCE.
>
> POINT III
>
> DEFENDANT'S SENTENCE WAS EXCESSIVE.

Having considered defendant's arguments in light of the record and applicable legal standards, we affirm defendant's conviction but remand for resentencing.

I.

We summarize the facts taken from the record of the non-jury trial that was conducted on six dates between February 11,

2015, and February 25, 2015. The State presented the testimony of the investigating officers; a detective from the Monmouth County Prosecutor's Office (MCPO) who examined defendant's computer; video evidence obtained from that computer; and defendant's statement. Defendant testified, and presented his brother as a character witness.

Freehold Township Police Officer Richard Hudak was specially assigned to the MCPO Internet Crimes Against Children (ICAC) Task Force. The ICAC Task Force used undercover computers equipped with special software to search the internet for persons who received or transmitted child pornography. That software allowed Hudak to log onto the peer-to-peer file sharing network, "Gnutella," in search of persons who shared child pornography media files. Hudak entered search terms representative of child pornography and was provided with a list of files posted and available for download by Gnutella peers. His search results contained the internet protocol (IP) addresses identifying the device of the sharing peer, as well as a cryptographic secure hash algorithm (SHA-1) of the file.

On December 13, 2010, Hudak's search yielded defendant's internet protocol (IP) address showing files available for download, which, based on the file names, Hudak believed to be child pornography. Three days later, Hudak downloaded four

video files containing child pornography. The videos were placed on a compact disc (CD) and played at trial.

On January 18, 2011, Hudak noticed defendant's IP address had changed, and that the shared directory contained several file names that were indicative of child pornography. On February 4, 2011, Hudak downloaded two files containing child pornography from defendant's second IP address, which were placed on a CD and played at trial.

Monmouth County Sheriff's Office Detective Timothy Baggitt is a certified computer forensic examiner who was also assigned to the ICAC Task Force. On May 7, 2011, Baggitt downloaded four video files from defendant's "global unique identifier" (GUID) to his ICAC computer. These videos were viewed by the court, and defendant stipulated that the acts they depicted met the statutory definition of child pornography. On June 1, 2011, Hudak learned that defendant's IP address had changed again. On that date, he downloaded three more files containing child pornography, which were also played at trial.

Various law enforcement officials responded to defendant's residence to execute a search warrant on February 1, 2012. Thirty-three CDs and DVDs were seized, along with several computers, including an Acer Aspire 4315 laptop, and hard drives. Defendant was taken into custody and brought to

Keansburg police headquarters, where he waived his <u>Miranda</u>[1] rights. He then gave a recorded statement admitting he lived alone in the house the past two years and that he had downloaded child pornography onto his laptop computer. He also admitted using LimeWire and then FrostWire peer-to-peer programs. Defendant described his knowledge of peer-to-peer file sharing during the following questioning by MCPO Lieutenant William Wei:

> WEI: You have FrostWire. You have downloaded those images. You're running FrostWire, you download images, what makes you think other people can't download it from you?
>
> DEFENDANT: I just never . . . thought about it. Obviously, they can. [] [Y]ou're absolutely right. Honestly, I just never thought about it.
>
> . . . .
>
> WEI: [] So Mike, you told me that you . . . didn't think possession of child pornography is illegal, but you told me that distribution is. So by you merely downloading this and saving it into your library, and you do see the meters of the green uploading, what is that telling me?
>
> DEFENDANT: I understand what you're saying. Obvious - - I - -
>
> WEI: Do you dispute that you made these videos shareable to other people using FrostWire?

---

[1] <u>Miranda v. Arizona</u>, 384 <u>U.S.</u> 436, 86 <u>S. Ct.</u> 1602, 16 <u>L. Ed.</u> 2d 694 (1966).

DEFENDANT: No. But obviously, it was in the . . . library, it was available.

WEI: Okay. And you knew that . . . that library where the images or the videos were was shareable?

DEFENDANT: Yes.

WEI: All right. And you knew that why?

DEFENDANT: [] [T]hat's how peer-to-peer works, I guess?

WEI: That's exactly how it works, but also, you saw the meters, you saw the thing that's, you know, sharing that you were uploading.

DEFENDANT: Okay.

MCPO Detective Richard Bruccoliere performed the forensic analysis of the Acer laptop computer and other seized items. Bruccoliere was assigned to the MCPO's Computer Crimes Unit since December 2009, and previously worked for the United States Secret Service, where he conducted computer and digital media forensic investigations. He was a certified forensic computer examiner who had undergone approximately 700 hours of classroom training and performed hundreds of forensic examinations. Bruccoliere's forensic analysis of defendant's Acer laptop revealed defendant had downloaded 631 still images and 353 videos of child pornography. Additionally, eleven of the thirty-three seized CDs and DVDs contained child pornographic images and videos.

When Bruccoliere testified how peer-to-peer file sharing worked, defense counsel objected on the basis that the State had not offered or qualified him as an expert witness. The judge noted that defendant admitted in his statement that he understood how peer-to-peer file sharing worked. Defense counsel also objected to Bruccoliere's testimony about the organization of the files, folders, and sub-folders found on the Acer laptop computer, the labeling of the CDs and DVDs, and Bruccoliere's testimony about a screen capture of defendant's computer. The judge cited State v. Doriguzzi, 334 N.J. Super. 530, 534 (App. Div. 2000), for the proposition that "computers and their functioning as no longer topics that are so esoteric as beyond the ken of the average person." The judge further found that Bruccoliere testified as a fact witness concerning the process by which he examined defendant's Acer laptop computer, and admitted the challenged testimony.

After the State rested, the trial court denied defendant's motion for a judgment of acquittal. R. 3:18-1. Defendant's brother, a retired police officer, testified as a character witness and described defendant's reputation in the community as "upstanding, hardworking, and he has good moral character."

Defendant testified he lacked "any in-depth knowledge of computers." He stated he had a "very basic knowledge" of peer-

to-peer file sharing and "knew it was possible" that downloaded child pornography could be distributed to someone else. However, he later testified he was not aware of the possibility of distributing child pornography through his computer, and that it was never his intention to do so. He acknowledged having told the police he "downloaded tons of pornography" on his laptop, and stated his purpose in doing so was to view it for his own sexual gratification.

At the conclusion of the trial, the judge found that Hudak, Baggitt, and Bruccoliere "were competent and credible witnesses." He noted that defendant's "computer had peer-to-peer file-sharing programs installed" on it, and that Bruccoliere "testified credibly from his operation and viewing of the computer that these were programs used to download pornography during the relevant times." The judge recounted the explicit nature of the sexual acts and the young ages of the children depicted in the videos that were played in court and concluded "there's no question that this is child pornography."

In contrast to the State's witnesses, the judge determined: "I do not find [defendant] credible. I find him not credible when he testified that he didn't really consider that others would obtain the child pornography files from him by way of the [] peer-to-peer network, the same way that he obtained it from

others.  I think he did."  The judge found defendant "knowingly use[d] a peer-to-peer system [to] search[] for child pornography, and he downloaded it to his computer during the relevant times as alleged. . . .  And [] defendant maintained [] some of them[] in his computer in the peer-to-peer system."  Ultimately, the judge concluded that defendant "understood how peer-to-peer worked and that if [the child pornography] was available to him, it was available from him through the peer-to-peer system and through his computer."  Based upon the judge's analysis of the trial proofs, he found defendant guilty of both charges.  This appeal followed.

## II.

### A.

Defendant first argues that the trial court erred in allowing Detective Bruccoliere to provide expert testimony at trial without having been offered or qualified as an expert in computer forensics.  We disagree.

We begin by noting that our standard of review on evidentiary rulings is abuse of discretion.  We only reverse those that "undermine confidence in the validity of the conviction or misapply the law[.]"  State v. Weaver, 219 N.J. 131, 149 (2014); See also State v. J.A.C., 210 N.J. 281, 295 (2012).  Simply stated, we do "not substitute [our] own judgment

for that of the trial court, unless the trial court's ruling is so wide of the mark that a manifest denial of justice resulted." J.A.C., supra, 210 N.J. at 295.

Witnesses, including police officers, testify in a variety of roles. A fact witness is one who testifies as to what "he or she perceived through one or more of the senses." State v. McLean, 205 N.J. 438, 460 (2011). "Fact testimony has always consisted of a description of what the officer did and saw[.]" Ibid. "Testimony of that type includes no opinion, lay or expert, and does not convey information about what the officer 'believed,' 'thought' or 'suspected,' but instead is an ordinary fact-based recitation by a witness with first-hand knowledge." Ibid. (citations omitted).

Expert witnesses, however, "explain the implications of observed behaviors that would otherwise fall outside the understanding of ordinary people on the jury." Ibid. "Expert testimony is admissible '[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" State v. Simms, 224 N.J. 393, 403 (2016) (quoting N.J.R.E. 702); see also State v. Cain, 224 N.J. 410, 420 (2016). "In other words, to be admissible, expert testimony should 'relate[] to a relevant subject that is beyond the understanding of the average

person of ordinary experience, education, and knowledge.'" State v. Sowell, 213 N.J. 89, 99 (2013) (alteration in original) (quoting State v. Odom, 116 N.J. 65, 71 (1989)). If the matter is "within the competence of the jury, expert testimony is not needed." Ibid.

Lay opinion testimony is governed by N.J.R.E. 701, which permits a witness not testifying as an expert to provide "testimony in the form of opinions or inferences . . . if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." Mclean, supra, 205 N.J. at 456. "Courts in New Jersey have permitted police officers to testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be deemed necessary." State v. LaBrutto, 114 N.J. 187, 198 (1989).

Here, Bruccoliere did not testify as an expert or provide an expert opinion. Rather, he testified as a fact witness about his forensic investigation of defendant's laptop, and merely reported what he found, including the presence of videos and images depicting child pornography, and peer-to-peer software that allowed others to access the child pornography.

Even if Bruccoliere's testimony fell within the scope of the expert opinion rule because it was specialized knowledge based on his training and experience, we find any error in its admission to be harmless. R. 2:10-2. It is clear from Bruccoliere's testimony that he possessed sufficient education, training, and experience to qualify as an expert in the field of computer forensics. Where a witness possesses sufficient qualifications to have testified as an expert, any error in allowing the lay opinion may be deemed harmless. State v. Kittrell, 279 N.J. Super. 225, 236 (App. Div. 1995). Here, as the trial judge aptly noted, although the State did not identify Bruccoliere as an expert, it provided the defense with his name, address, curriculum vitae setting forth his qualifications, and his forensic report. Accordingly, defendant was not surprised or prejudiced by Bruccoliere's testimony, and the trial judge did not abuse his discretion in admitting it.

## B.

Defendant next argues that his conviction on Count Two charging endangering the welfare of a child by distributing child pornography was against the weight of the evidence. Specifically, he contends that he simply possessed the child pornography for private and personal use, and that there is

insufficient evidence in the record that he received it with the purpose of distributing it, or that he did so knowingly.

Our review of a judge's verdict in a non-jury case is limited. The standard is not whether the verdict was against the weight of the evidence, but rather "whether there is sufficient credible evidence in the record to support the judge's determination." State ex rel. R.V., 280 N.J. Super. 118, 121 (App. Div. 1995). Moreover, we are obliged to "give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"[T]he factual findings of the trial court are binding on appeal when supported by adequate, substantial, credible evidence." State ex rel. W.M., 364 N.J. Super. 155, 165 (App. Div. 2003). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App.

Div.), certif. denied, 40 N.J. 221 (1963)). Applying these standards, we discern no basis for interfering with the judge's well-developed findings, conclusions, and disposition on these charges.

At the time of the crimes charged in the indictment, N.J.S.A. 2C:24-4b(5)(a) provided:

> Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer, through any means, including the Internet, any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.[2]

In State v. Lyons, 417 N.J. Super. 251, 253 (App. Div. 2010), we examined the State's challenge to an order granting the defendant's motion to dismiss an indictment charging him "with possessing, offering and distributing child pornography by use of a peer-to-peer file sharing network on the internet." The trial judge found the State's evidence did not include proof

--------

[2] The statute has since been amended by P.L. 2013, c. 136, to clarify that the knowing storage or maintenance of child pornography using a file sharing program does not require proof that the defendant intended to share images or videos of child pornography over the peer-to-peer network.

the defendant intended to transfer or distribute the images with peers on the Gnutella network through his LimeWire shared folder. Id. at 253-54. The trial judge concluded that although the defendant knew the shared child pornography files "were accessible to others over the Internet by virtue of being in such a folder, [his] passive conduct could not be sufficient to constitute distributing or offering the materials" as used in N.J.S.A. 2C:24-4b(5)(a). Ibid. We disagreed, id. at 257, stating "[i]n the context of this statute, these terms commonly mean the act by which one person makes known to another that he or she may have for the taking an item possessed by the offeror." Id. at 260. Further, we considered the terms in the statute in light of the legislative initiatives, concluding

> the terms should be construed very broadly. The evidence of what [the] defendant did, while knowing what he knew, is the kind of conduct targeted by these enactments. [The d]efendant used the modern technology of computers and the Internet, with a file sharing network, to provide and offer child pornography he possessed in his shared folder.
>
> [Id. at 262.]

Lyons makes clear, under N.J.S.A. 2C:24-4b(5)(a), the State's burden is to prove an offer was made; it need not show actual access to a defendant's shared files occurred. Id. at 260-63. In this matter, relying on Lyons, supra, 417 N.J.

Super. at 267-69, the trial judge found that "placing such child pornography in a file, [] in a searchable, accessible, shared folder is an offer to distribute such over the file-sharing network, and a fact finder . . . could reasonably infer that [] defendant knew that he was sharing his downloaded child pornography files." The judge found it "inescapable that [] defendant would have known . . . [t]hat in his files, in his default shared folders, with his having downloaded the peer-to-peer system, that it was available to other people." Accordingly, the State's evidence sufficiently supported the offense charged as defendant acted to "offer" his downloaded child pornographic images and videos by making them available through peer-to-peer file sharing, thereby allowing others on the network to access and copy them.

## C.

Defendant's final arguments relate to his sentence. He contends that, because the judge failed to merge the possession charge with the distribution charge, failed to apply the appropriate aggravating and mitigating factors, and imposed consecutive prison terms, the resulting sentence was excessive. We agree, and remand for the court to merge the two offenses and re-sentence defendant without consideration of aggravating factor one, N.J.S.A. 2C:44-1(a)(1).

A-0459-15T4

At defendant's sentencing hearing, the court found aggravating factors one, the nature and circumstances of the offense; two, the gravity of harm to the victim (N.J.S.A. 2C:44-1(a)(2)); three, the risk defendant will commit another offense (N.J.S.A. 2C:44-1(a)(3)); and nine, the need for deterrence (N.J.S.A. 2C:44-1(a)(9)). The court also found mitigating factor seven, no prior criminal history (N.J.S.A. 2C:44-1(b)(7)).

With respect to aggravating factor one, the judge elaborated: "These are numerous, numerous children, infants, very young children in these cases who are portrayed. Not just portrayed, they were photographed. They were caused to engage in these sexual activities . . . . [T]hey were all quite young, quite, quite young." The judge then went on to carefully, and correctly, analyze and apply each of the remaining aggravating and mitigating factors advanced by the parties.

We review sentencing determinations for abuse of discretion. State v. Robinson, 217 N.J. 594, 603 (2014) (citing State v. Roth, 95 N.J. 334, 364-65 (1984)). For each degree of crime, N.J.S.A. 2C:43-6(a) sets forth "sentences within the maximum and minimum range[.]" Roth, supra, 95 N.J. at 359. The sentencing court must "undertake[] an examination and weighing of the aggravating and mitigating factors listed in [N.J.S.A.]

2C:44-1(a) and (b)." Ibid.; State v. Kruse, 105 N.J. 354, 359 (1987). "'[W]hen the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range.'" State v. Fuentes, 217 N.J. 57, 73 (2014) (quoting State v. Natale, 184 N.J. 458, 488 (2005)). Furthermore, "[e]ach factor found by the trial court to be relevant must be supported by 'competent, reasonably credible evidence'" in the record. Id. at 72 (quoting Roth, supra, 95 N.J. at 363).

We accord deference to the sentencing court's determination. Fuentes, supra, 217 N.J. at 70 (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). We must affirm defendant's sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (quoting Roth, supra, 95 N.J. at 364-65).]

We will remand for resentencing if the sentencing court fails to provide a qualitative analysis of the relevant sentencing factors, ibid. (citing Kruse, supra, 105 N.J. at 363), or if it

considers an inappropriate aggravating factor. Ibid. (citing State v. Pineda, 119 N.J. 621, 628 (1990)).

Aggravating factor one requires consideration of "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner[.]" N.J.S.A. 2C:44-1(a)(1). When assessing whether this factor applies, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (quoting State v. Hodge, 95 N.J. 369, 378-79 (1984)). The court may also consider "'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.'" Fuentes, supra, 217 N.J. at 75 (quoting State v. Henry, 418 N.J. Super. 481, 493 (Law Div. 2010)). In determining whether a defendant's conduct was "'especially heinous, cruel, or depraved,' a sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." Id. at 74-75; see also State v. Yarbough, 100 N.J. 627, 645 (1985).

We conclude that, in applying aggravating factor one, the court engaged in impermissible double-counting. By its nature, child pornography inherently is especially heinous, cruel and depraved, and defendant's possession and distribution of it in this case was no different. Since the court erred in finding aggravating factor one, we remand for reconsideration of defendant's sentence in the absence of that aggravating factor.

Turning to the merger issue, the doctrine of merger is based on the well-established concept that "an accused [who] committed only one offense . . . cannot be punished as if for two." State v. Davis, 68 N.J. 69, 77 (1975). "When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense." N.J.S.A. 2C:1-8a. However, merger is required when one offense is a lesser-included offense of another and "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." N.J.S.A. 2C:1-8d.

The standard for merger of offenses as required by N.J.S.A. 2C:1-8 has been characterized as "mechanical." State v. Truglia, 97 N.J. 513, 520 (1984). Consequently, courts are to apply the standard articulated in Davis as the "preferred and

more flexible standard." State v. Diaz, 144 N.J. 628, 637 (1996). It requires

> analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [Davis, supra, 68 N.J. at 81.]

Applying these well-settled standards, we conclude that, under the specific facts presented, defendant's convictions for fourth-degree possession of child pornography and second-degree distribution of child pornography merge. Here, the crimes were reasonably proximate in time and place, and defendant's use of the file sharing programs was a necessary ingredient and integral part of both his possession of the child pornography and the means by which he made it accessible to others.

Defendant's conviction is affirmed. We remand for the court to resentence defendant without consideration of aggravating factor one, and to merge Count One with Count Two.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION