# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1428-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROGELIO LOPEZ,

    Defendant-Appellant.

_____

Submitted January 14, 2019 – Decided January 30, 2019

Before Judges Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-10-1291.

Joseph E. Krakora, Public Defender, attorney for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Ian C. Kennedy, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Rogelio Lopez appeals from his conviction and sentence for three violations of conditions of Community Supervision for Life ("CSL"). We affirm defendant's conviction, but remand for the entry of an amended judgment of conviction reflecting fourth-degree offenses and the removal of Parole Supervision for Life ("PSL") component of the sentence to conform with the holding of State v. Hester, 233 N.J. 381 (2018).

On October 8, 2015, a Bergen County grand jury indicted defendant for three counts of third-degree violations of CSL conditions, N.J.S.A. 2C:43-6.4(d). The three CSL violations were failing to notify his parole officer of an arrest (count one), failing to notify his parole officer of being served with a temporary restraining order ("TRO") (count two), and failing to report to his parole officer as directed (count three). After defendant waived his right to a jury trial, the Honorable James J. Guida, J.S.C., presided over a bench trial on June 17, 2016.

At trial, the parties stipulated that defendant was on CSL as a result of a 2004 conviction and was required to follow the rules and regulations of CSL. On December 11, 2008, defendant signed a CSL certificate. The conditions in the CSL certificate included the following: (1) notify your parole officer upon

any arrest; (2) immediately notify your parole officer if served with a TRO; and (3) report to your parole officer as instructed.

The State presented three witnesses: Bergenfield Police Officer Jorge Candia, Bergenfield Detective Kevin Doheny, and Parole Officer John Kowal. The State's witnesses testified to the following facts.

On June 15, 2015, Officer Candia interviewed a woman who had come to the police station. Based on the woman's complaints, Candia prepared an arrest warrant charging defendant with simple assault. Additionally, Candia advised the woman that she could apply for a restraining order. That same day, the woman applied for a restraining order before the Hackensack Municipal Court.

After preparing the warrant, Candia called defendant. Candia advised defendant that a warrant had been issued charging defendant with simple assault and asked defendant to come to the Bergenfield Police Department. Defendant went to the police station the same day around noon. Defendant was arrested and released on bail.

Detective Doheny saw defendant while he being processed at the police department. Doheny worked as the Megan's Law Officer for the department, which required that he meet with all registered sex offenders who reside in Bergenfield. Doheny was familiar with defendant as one of the registrants.

3

Defendant called out to Doheny and told him that "due to an incident," he needed to file a change of address for his Megan's Law registration.

Doheny immediately began filling out address-change paperwork with defendant and forwarded the paperwork to the Englewood Police Department and the Bergen County Prosecutor's Office. Doheny did not notify defendant's CSL parole supervisor of the address change or incident and did not tell defendant that he would notify his CSL parole supervisor. Additionally, at 3:18 p.m. that day, defendant left a voicemail message for his CSL parole officer, John Kowal, indicating that he had relocated to Englewood, but did not explain why he had moved to Englewood.

Parole Officer Kowal did not listen to the message until 7:45 a.m. the next day, June 16. After listening to the message, Kowal called defendant and asked him if he was moving with his current girlfriend and if there were any new arrests or domestic violence issues. Defendant stated that he was not moving with his girlfriend, but that there were not any arrests or domestic violence issues.

Shortly after the phone conversation, Kowal received an automatic email notification from the New Jersey State Police system that defendant was arrested. After receiving the arrest report from the Bergenfield Police

4

Department and discussing the case with his supervisor, Kowal called defendant and requested that he come to the parole office the following day, June 17, with proof of his Meagan's Law registration and a pay stub. Defendant requested that he be permitted to report at 8:30 a.m. that day so that he would not miss work, and Kowal agreed that they could meet at that time. Kowal did not indicate to defendant that he was aware of the arrest during this conversation.

Additionally, on June 16, Officer Candia called defendant and asked him to return to the police department. Defendant returned to the police department at 6:54 p.m., and Candia served the TRO on defendant.

On June 17, defendant did not arrive at the parole office at 8:30 a.m. as scheduled. Instead, he called Kowal shortly after 8:30 a.m. and stated that he would not be reporting to the parole office on that day, because he needed to go to the Department of Motor Vehicles to reinstate his driver's license, run some errands, and go to work. Kowal advised defendant that he needed to report to the parole office as a condition of parole, but defendant responded that he was not going to report at that time but might report later if he had time.

Defendant did not report to the parole office on June 17. Kowal reviewed the case with his sergeant, and they decided to charge defendant with violations

of CSL conditions.  A warrant for defendant's arrest was issued the next day. Defendant was arrested seven days later.

Defendant testified on his own behalf, detailing a slightly different chronology of events.  He testified that the police responded to a residence in Bergenfield at approximately 12:45 a.m. on June 15, but that he was not arrested. Defendant gathered his belongings from the residence and left the residence at 7:30 a.m. the next morning to move out from the residence.  After leaving the residence, he received a phone call from Officer Candia advising that a warrant had been issued for his arrest.  He then proceeded to the police station, where he was processed and released on bail.  While at the police department, defendant flagged down Officer Doheny and filled out the paperwork to change his address for his Megan's Law registration.

After leaving the Bergenfield Police Department, defendant traveled to the Englewood Police Department, where he registered as a sex offender using his new address.  The Englewood officer indicated that she had received all the information from Detective Doheny.  Defendant testified that when he left a voicemail for Parole Officer Kowal later the day to report his address change, he did not mention that he had been arrested because he was not aware he was required to do so.

6

Defendant testified that he only spoke to Kowal on the phone one time prior to being arrested. On June 16, Kowal returned defendant's voicemail and confirmed that defendant had changed his Megan's Law registration. According to defendant, Kowal cursed at defendant and threatened to put out a warrant for his arrest if he did not report to the parole office immediately. Defendant responded that he could not report at that time, because he had already missed a day of work and needed to reinstate his driver's license in order to hold a job.

According to defendant, Kowal did not ask any questions about domestic violence incidents or arrests during this conversation. Defendant did not understand why he had to come to the parole office because he was unaware that he had broken any laws or had violated conditions of his CSL. Defendant did not mention the Bergenfield arrest because he "assumed that [Kowal] already had the – they already knew what had transpired based on the whole process of me getting arrested, changing the address, and the communication I had with different officers."

On cross-examination, defendant acknowledged that he had been previously convicted of violations of CSL conditions two times, on March 5, 2010 and November 28, 2012 respectively. Despite the two convictions,

defendant stated that he had not reviewed the CSL conditions since 2008 when he signed the CSL certificate.

In an oral opinion, Judge Guida found defendant guilty beyond a reasonable doubt on all three counts. Judge Guida determined that Parole Officer Kowal's testimony was credible, but that defendant's testimony "was incredible and . . . discredited by the evidence." Specifically, Judge Guida discredited defendant's testimony that he had not reviewed the conditions of CSL after his two previous convictions for violations of his CSL and that he only had one conversation with Parole Officer Kowal on June 16.

Judge Guida found that defendant knowingly violated conditions of CSL by failing to notify his CSL officer of his arrest, failing to notify the CSL officer of the TRO on June 16, and failing to report to the parole office on June 17 as directed. Judge Guida also found that defendant's assumption that Parole Officer Kowal already knew about his arrest and the TRO did not constitute good cause for failing to affirmatively disclose the arrest and the TRO. Similarly, Judge Guida concluded that defendant's concerns about losing his job if he did not immediately reinstate his driver's license did not rise to the level of good cause excusing defendant's failure to report to the parole office.

Consequently, Judge Guida found that the State had proven the elements of all three counts beyond a reasonable doubt.

On August 19, 2016, Judge Guida sentenced defendant to a four-year term of incarceration on each count, with the sentences to run concurrently with each other. Judge Guida rejected defendant's argument that sentencing him as a third-degree offender rather than a fourth-degree offender, based on the Legislature's 2014 amendment to N.J.S.A. 2C:43-6.4, L. 2013, c. 214, § 4 (effective July 1, 2014), violated the Ex Post Facto Clauses of the United States and New Jersey Constitutions.[1] On December 1, 2016, Judge Guida filed an amended judgment of conviction indicating that defendant was also sentenced to Parole Supervision for Life ("PSL").

Defendant appealed his conviction and sentence.[2] On appeal, defendant raises the following points for our review:

_____

[1] U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law[.]"); N.J. Const. art. IV, § 7, ¶ 3 ("The Legislature shall not pass any . . . ex post facto law[.]").

[2] By order dated January 26, 2017, we stayed all appeals involving claims of alleged violations of the Ex Post Facto clauses of the United States and New Jersey constitutions in which defendants were sentenced to CSL or PSL pending the New Jersey Supreme Court's resolution of State v. Hester, 449 N.J. Super. 314 (App. Div. 2017), aff'd 233 N.J. 381 (2018). On September 15, 2017, we granted defendant's motion to partially lift the stay and consider defendant's

POINT I

A JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN ENTERED ON ALL THREE COUNTS BECAUSE THE STATE FAILED TO PROVE THAT DEFENDANT DID NOT HAVE GOOD CAUSE TO FAIL TO COMPLY WITH THE CONDITIONS OF HIS COMMUNITY SUPERVISION FOR LIFE.

A. Because Defendant Correctly Assumed That The Various Law Enforcement Officers Were In Contact With One Another, And Were Aware Of His Arrest And The TRO, The State Failed To Prove That He Did Not Have Good Cause For Not Directly Informing Officer Kowal Of Those Facts. As Such, An Acquittal Should Have Been Entered On Counts One And Two.

B. Defendant Had Good Cause Not To Report To The Parole Office On June 17th Because The Uncontradicted Testimony Was That Doing So May Have Cost Him His Job. As Such, An Acquittal Also Should Have Been Entered On Count Three.

POINT II

THE DEFENDANT'S CONVICTION AND SENTENCE FOR THIRD-DEGREE VIOLATION OF HIS CSL CONDITIONS VIOLATED THE EX POST FACTO CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS.

Our review of a judge's verdict following a bench trial is limited. State v. Miller, 449 N.J. Super. 460, 472 (App. Div. 2017), certif. granted, 234 N.J. 1

_____

claims on appeal that were unrelated to Ex Post Facto issues, but ordered that the case should not be calendared until the Supreme Court's resolution of Hester.

10

(2018). "The standard is not whether the verdict was against the weight of the evidence, but rather 'whether there is sufficient credible evidence in the record to support the judge's determination.'" Ibid. (quoting State ex rel. R.V., 280 N.J. Super. 118, 121 (App. Div. 1995)). We must "give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"[T]he factual findings of the trial court are binding on appeal when supported by adequate, substantial, credible evidence." State ex rel. W.M., 364 N.J. Super. 155, 165 (App. Div. 2003). We, however, review conclusions of law de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

We first address defendant's contention that a judgment of acquittal should have been entered on all three counts because he had good cause for each violation. N.J.S.A. 2C:43-6.4(d) provides: "A person who violates a condition of a special sentence of community supervision for life . . . without good cause is guilty of a crime[.]" On appeal, defendant does not challenge whether he was on CSL or knowingly violated the three conditions for which he was found guilty

of violating. Defendant only challenges the final element: that the violations were "without good cause."

As "without good cause" is an element of the crime, it is the State's burden to prove the lack of good cause beyond a reasonable doubt. See State v. Kiriakakis, 235 N.J. 420, 431 (2018) ("The United States Constitution guarantees the accused the right to trial by jury and places the burden on the State to prove every element of the offense beyond a reasonable doubt."). In assessing whether defendant had good cause for any of the three violations alleged, the trial court applied the definition of "good cause" contained in the model jury charge: "Good cause is defined as a substantial reason that affords a legal excuse for the failure to abide by the condition." Model Jury Charge (Criminal), "Violation of a Condition of Parole Supervision for Life Fourth Degree (N.J.S.A. 2C:43-6.4(d))" (rev. January 1, 2014)). The Model Charge notes:

> The statute does not define good cause. It has been noted that "it is impossible to lay down a universal definition of good cause for disclosure and inspection, or an all-inclusive and definitive catalogue of all of the circumstances to be considered by a court in determining whether there is good cause." Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409, 414 (App. Div. 1965). Since the statute does not define good cause, the definition in this Model Jury Charge is adapted from the term's use in cases involving the

> opening of a default which would appear to be analogous to the conduct being proscribed by the alleged crime as it relates to a party's actions as opposed to the attorney's actions. <u>See</u> <u>Nemeth v. Otis Elevator Co.</u>, 55 N.J. Super. 493, 497 (App. Div. 1959) ("Whenever the words 'good cause' appear in statutes or rules relating to the opening of defaults they mean (in the absence of other modifying or controlling words) a substantial reason that affords legal excuse for the default." ). <u>See also</u> <u>R.</u> 4:43.3.
>
> [<u>Id.</u> at 8 n. 17.]

Although we have not previously interpreted the "good cause" standard in a criminal context, New Jersey courts have interpreted the term "good cause" in other contexts. <u>See</u> <u>Brady v. Bd. of Review</u>, 152 N.J. 197, 214 (1997) ("Although 'good cause' is not statutorily defined [in the Unemployment Compensation Act], New Jersey courts have construed the phrase to mean cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." (internal quotation omitted)); <u>Templeton Arms v. Feins</u>, 220 N.J. Super. 1, 21 (App. Div. 1987) ("The good cause standard, then, is flexible, taking its shape from the particular facts to which it is applied. Good cause is distinct from good faith, although good faith is relevant in evaluating good cause."). In this case, we find that the trial judge correctly applied the standard for "good cause" contained in the Model Jury Charge. <u>See</u> <u>Estate of Kotsovska ex rel. Kotsovska v. Liebman</u>, 221 N.J. 568,

13

595 (2015) ("Generally speaking, the language contained in any model charge results from the considered discussion amongst experienced jurists and practitioners."); State v. R.B., 183 N.J. 308, 325 (2005) ("[I]nsofar as consistent with and modified to meet the facts adduced at trial, model jury charges should be followed and read in their entirety to the jury.").

Accordingly, giving deference to the trial court's credibility determinations and factual findings, we find that there is sufficient credible evidence in the record to prove beyond a reasonable doubt that defendant did not have good cause to violate the conditions of his CSL. As to count one and two, the trial court correctly concluded that defendant's belief that Parole Officer Kowal already knew about the arrest and TRO from other law enforcement officers did not constitute "a substantial reason that affords a legal excuse for the failure" to affirmatively disclose the arrest and TRO to Parole Officer Kowal.

Similarly, as to count three, we agree with the trial judge that defendant's concerns about losing his job if he did not immediately reinstate his license do not rise to the level of good cause. As the trial judge noted, defendant did not make any follow-up phone calls or attempt to reschedule the meeting after he refused to report on June 17. Under the circumstances of this case, defendant's

14

concerns about losing his job are not "a substantial reason that affords a legal excuse for the failure" to report to his parole officer as instructed.

We next address defendant's argument that his sentence as a third degree offender violates the Ex Post Facto Clauses of the United States and New Jersey Constitutions. The 2014 amendment to N.J.S.A. 2C:43-6.4, L. 2013, c. 214, § 4 (effective July 1, 2014), increased the penalties for a violation of a CSL condition:

> Before the 2014 Amendment, a violation of the terms of CSL was punishable as a fourth-degree crime. See L. 1994, c. 130, § 2. The 2014 Amendment increased a CSL violation to a third-degree crime punishable by a presumptive term of imprisonment, and such a violation converted CSL to parole supervision for life (PSL). See N.J.S.A. 2C:43-6.4(a) and (d); see also L. 2013, c. 214, § 4.
>
> [Hester, 233 N.J. at 385.]

In Hester, the Court held that the retroactive application of the 2014 amendment to N.J.S.A. 2C:43-6.4 to defendants who had been sentenced to CSL prior to the effective date of the amendment violated the Ex Post Facto Clauses of the United States and New Jersey Constitutions. Id. at 398. Accordingly, as defendant was sentenced to CSL prior to July 1, 2014, we remand for the entry of an amended judgment of conviction reflecting fourth-degree violations of CSL conditions and the removal of the PSL component of the sentence. See

15

State v. Perez, 220 N.J. 423, 443 (2015) (remanding for resentencing to correct Ex Post Facto violation).

In summary, we affirm defendant's conviction. We remand for the entry of an amended judgment of conviction reflecting fourth-degree offenses and the removal of PSL component of the sentence. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1428-16T2