JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
**19 In this appeal, we first consider whether it is an abuse of discretion for a trial court to apply aggravating factor one when sentencing a defendant convicted of possessing and distributing child pornography. Second, we consider whether defendant Michael Miller was appropriately sentenced to consecutive terms of imprisonment for his possession and distribution of child pornography.
Miller was convicted of possessing and distributing over 900 images and videos of child pornography through the use of online peer-to-peer file-sharing programs. He was also in possession of thirty-three CDs and DVDs, eleven of which contained photographs and recordings of child pornography separate from those found on his computer. At Miller's sentencing hearing, the trial judge applied aggravating factor one, the nature and circumstances of the offense, N.J.S.A. 2C:44-1(a)(1), because the pornography possessed and distributed by Miller depicted the rape, penetration, and sexual assault of extremely young children, at least one of whom was an infant. After considering the relevant aggravating and mitigating factors, the trial judge sentenced Miller to seven years' imprisonment for the distribution charge, and one year of imprisonment for the possession charge, to be served consecutively. Miller subsequently appealed.
The Appellate Division reversed and remanded Miller's sentence. In a published opinion, which instructed the trial court to re-sentence Miller without consideration of aggravating factor one and to merge Miller's possession and distribution convictions. The appellate panel determined that the trial court engaged in impermissible double-counting when it applied aggravating factor one **20 because child pornography is inherently heinous, cruel, and depraved, and Miller's possession and distribution of such pornography in this case was no different. The panel further held that the trial court should have merged Miller's possession and distribution convictions because the crimes were reasonably proximate in time and place, and Miller's use of the file-sharing programs was a necessary ingredient and an integral part of both his possession and his distribution of the child pornography.
We conclude that the panel's opinion deprives trial judges of their discretion to *105 make nuanced assessments of the nature and circumstances of offenses involving child pornography. We further conclude that Miller's possession charge involved child pornographic material beyond that involved in his distribution charge -- there was pornographic material in Miller's possession for an extended period of time that was not encompassed in the distribution charge. The possession and distribution offenses were therefore distinct, and the trial court appropriately determined that the offenses did not merge for sentencing purposes. Accordingly, we reverse the judgment of the Appellate Division and reinstate Miller's sentence.
I.
A.
From 2010 to 2012, Freehold Township Police Officer Richard Hudak was assigned to the Computer Crimes Unit of the Monmouth County Prosecutor's Office (MCPO) as part of the Internet Crimes Against Children (ICAC) task force. By using "undercover computers," Hudak was able to locate computers within Monmouth County that were making suspected images and videos of children performing prohibited sexual acts available for download. As was the case with defendant Michael Miller, these pictures and videos were oftentimes shared via peer-to-peer file-sharing. Peer-to-peer networks allow computer users to exchange audio, video, and image files with each other over the internet, with the **21 computers being referred to as "peers." When users download a particular peer-to-peer software program, they offer their computers and files to other users for sharing, and can download files from others using the same software.
Through his investigation, Officer Hudak was able to determine that Miller's computer was sending and receiving files containing child pornography via peer-to-peer networks. On February 1, 2012, Hudak and other members of the MCPO ICAC task force executed a search warrant at Miller's Keansburg residence. The officers seized thirty-three CDs and DVDs, and several computers -- including an Acer Aspire 4315 laptop. Eleven of those CDs and DVDs were found to contain images or videos of child pornography. Miller was brought to the Keansburg Police Station, where he was read and waived his Miranda [1] rights. While being questioned by police, Miller acknowledged that he had been living alone at his residence for two years and that he previously used the peer-to-peer file-sharing program LimeWire until it was shut down in 2010, at which time he began using FrostWire. When asked if he was admitting to downloading child pornography, Miller replied "Yes."
Miller was then asked about his understanding of peer-to-peer networks and responded, "[I]f you have a song on your computer, I can download it and share [it]." Miller explained, "I know it's wrong to distribute. I didn't realize that I was distributing [it], because it was on my library," but he later acknowledged, "I never thought it through ... that if I have it on here, other people can get it from me. And I know that's exactly how peer-to-peer works." Miller further stated, "Obviously, if it's in the FrostWire file ... it's available to anyone else, so it's not necessarily personal." When Miller was asked whether he disputed that he made the child pornography videos shareable to other people through FrostWire, he responded, "No." Miller then acknowledged that *106 he **22 knew "that the library where the images or the videos were was shareable."
During this interview, Miller was shown sanitized photographs taken from the pornographic videos obtained from his computer and was asked to sign his initials on the pictures he recognized. The photographs that Miller initialed and that were presented to the judge at trial included: (1) an image of an adult male and a juvenile female with a pacifier in her mouth and her legs drawn up with her vaginal area exposed; (2) a photo where both an adult female and a juvenile male are nude, and the male is straddling the adult female's legs; (3) a photo of a juvenile female performing fellatio on an adult male; (4) a photo of a juvenile female and juvenile male with their genitals exposed alongside an adult female with her breasts exposed; (5) an image of a juvenile female as she straddles and masturbates an adult male; and (6) an image of a naked juvenile male and a naked adult female with another juvenile female wearing a type of nightgown.
Detective Richard Bruccoliere conducted a forensic analysis of all the media that was seized in this case. Bruccoliere investigated Miller's Acer Aspire 4315 laptop, in which he found 631 images and 353 videos of child pornography. Miller's laptop also contained three peer-to-peer file-sharing programs: FrostWire, uTorrent, and MediaGet.
B.
On May 20, 2013, a Monmouth County grand jury returned an Indictment charging Miller with fourth-degree endangering the welfare of a child by knowingly possessing child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(b)[2] (count one), and second-degree endangering the welfare of a child by knowingly distributing child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(a) (count **23 two). Miller waived his right to a jury trial and, after a two-week bench trial, was found guilty of both charges.
At the sentencing hearing, the court applied aggravating factor one, "[t]he nature and circumstances of the offense." See N.J.S.A. 2C:44-1(a)(1). In applying aggravating factor one, the court noted that "[t]hese are numerous, numerous children, infants, very young children in these cases who are portrayed. Not just portrayed, they were photographed. They were caused to engage in these sexual activities. One had a binky in her mouth[,] [b]ut they were all quite young, quite, quite young." The court further noted that the content of Miller's pornography was "heinous, and cruel, and depraved," and that the "little girls and boys" depicted in Miller's pornography were "treat[ed] as if they were not people, as if they were mere objects."
The court also applied aggravating factor two, the gravity of harm to the victim ( N.J.S.A. 2C:44-1(a)(2) ); aggravating factor three, the risk "defendant will commit another offense" (id. § 44-1(a)(3) ); and aggravating factor nine, the need for deterrence (id. § 44-1(a)(9) ). The court applied mitigating factor seven, no prior criminal history (id. § 44-1(b)(7) ), as the sole mitigating factor. The court then concluded that it would not merge counts one and two together, explaining that "[Miller]'s possession of the child pornography was not fleeting and was for a substantial period of time. And his use of the child pornography [was] distinct from his making the files available by way of the [p]eer-to-[p]eer programs."
*107 The court ultimately sentenced Miller to seven years' imprisonment for the distribution charge and one year of imprisonment for the possession charge. The court determined that the sentences must run consecutively, explaining that "these are separate crimes" that were "horrific [and] reprehensible." The court reasoned that Miller's crimes "were independent of one another, involv[ing] separate acts committed at different times." Miller was also required to comply with Megan's Law, N.J.S.A. 2C:7-1 to -23.
**24 Miller appealed his conviction. He argued, among other things, that his sentence was excessive. The appellate panel concluded that the trial court "engaged in impermissible double-counting," reasoning that "[b]y its nature, child pornography inherently is especially heinous, cruel and depraved, and [Miller]'s possession and distribution of it in this case was no different." State v. Miller, 449 N.J. Super. 460, 476, 158 A.3d 1185 (App. Div. 2017). The panel asserted that, "under the specific facts presented" in this case, Miller's convictions for fourth-degree possession of child pornography and second-degree distribution of child pornography should have been merged. Id. at 477, 158 A.3d 1185. The panel opined that Miller's "crimes were reasonably proximate in time and place, and [Miller's] use of the file-sharing programs was a necessary ingredient and [an] integral part of both his possession" and his distribution of the child pornography. Ibid. The panel ultimately affirmed Miller's conviction but remanded the matter, directing the trial court to re-sentence him without consideration of aggravating factor one, and to merge count one with count two. Ibid.
The State sought certification from this Court, which we granted.[3] 234 N.J. 1, 187 A.3d 839 (2018). We also granted the Attorney General leave to appear as amicus curiae.
II.
A.
The State first argues that the Appellate Division's "one size fits all" approach to sentencing in child pornography cases ignores the wide range of images criminalized by N.J.S.A. 2C:24-4(b) and strips sentencing judges of their discretion to make nuanced assessments of the nature and circumstances of different offenses. The State asserts that the plain language of N.J.S.A. 2C:24-4(b)(1)
**25 does not distinguish between a video of an adult male vaginally raping a three-year-old girl and a photograph of a consenting seventeen-year-old girl taken by her eighteen-year-old boyfriend during a sexual encounter.
In that hypothetical, the State reasons, both of the victims meet the definition of "child," defined in N.J.S.A. 2C:24-4(b)(1) as "any person under 18 years of age,"[4] and both images depict a "prohibited sexual act" as defined by that statute. The State contends that although the photograph of a seventeen-year-old is illegal and inappropriate, it bears none of the violence, cruelty, and depravity depicted in a hardcore video of the sexual assault of a vulnerable, prepubescent minor.
The State further argues that sentencing courts are required to differentiate *108 between the least culpable and most culpable offenders and, to accomplish this, "[a] sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.' " (quoting State v. Fuentes, 217 N.J. 57, 75, 85 A.3d 923 (2014) (second alteration in original) (quoting, in turn, State v. Henry, 418 N.J. Super. 481, 493, 14 A.3d 750 (Law Div. 2010) ) ). The State asserts that the Appellate Division's blanket prohibition on trial courts' consideration of aggravating factor one in child pornography prosecutions stands in defiance of this bedrock principle of sentencing law.
Second, the State argues that the Appellate Division erroneously required the merger of Miller's convictions for child endangerment by possessing child pornography (count one) and child endangerment by distributing child pornography (count two). The State cites to State v. Davis, 68 N.J. 69, 81, 342 A.2d 841 (1975), in which this Court considered the issue of merger in the context of **26 the possession and distribution of a controlled dangerous substance and found them to be separate offenses subject to separate punishments.
The State argues that, in this case, Miller was in possession of the child pornography as early as December 16, 2010,[5] but the start date of his distribution as charged in the indictment was almost six months later -- June 13, 2011. Given those time frames, the State contends there is ample evidence to support the conclusion that Miller was not engaged in "fleeting and shadowy" possession of the child pornography purely incidental to the sharing of the files over the peer-to-peer network, but was instead in possession of the child pornography for a substantial period of time separate and apart from its distribution.
B.
The Attorney General, appearing as amicus curiae, agrees with the State that while all crimes involving the sexual exploitation of children are inherently heinous, cruel, and depraved, some exploitation of children is especially so, and defendants who engage in such conduct should face harsher punishment. The Attorney General notes that Miller possessed and distributed hundreds of pornographic images of many children, and that the victims in the images were very young, some of whom were infants and toddlers, including one child who had a pacifier in her mouth while she was being sexually assaulted.
The Attorney General further notes that Miller was convicted of distributing child pornography from June 13, 2011, to February 1, 2012, but was convicted of possessing child pornography from May 29, 2009, to February 1, 2012 -- a period of time that encompasses over two more years than the distribution charge. The Attorney General also notes that although nearly 1000 images were stored on Miller's computer, he had an additional eleven CDs and DVDs **27 containing photographs and video recordings of child pornography that were not on the computer and thus were not available for distribution.
C.
Miller notes that when he committed these offenses, N.J.S.A. 2C:24-4(b)(1) defined a "child" as anyone under the age of sixteen. Miller argues that the Legislature had therefore already taken the age of the *109 victim into account by making it an element of possessing and distributing child pornography. Miller further asserts that had the Legislature wanted to punish offenses depicting younger victims more severely, or more violent acts differently, it would have written the statute to reflect that.
According to Miller, by their very nature, child pornography prosecutions virtually always involve material with children assumed to be well below the age of eighteen. Thus, he argues, without an additional finding of some feature other than age, aggravating factor one would apply in virtually every case involving child pornography. Miller asserts that it is hard to imagine how a finding of extreme youth could be made with clarity in child pornography cases because the real ages of the children depicted are generally unknown. Miller concludes that, as a result, courts are left in the position of guessing age without any additional information, which would lead to an uneven application of aggravating factor one.
Second, Miller argues the Appellate Division properly determined that his conviction for fourth-degree possession of child pornography should merge with his conviction for second-degree distribution of child pornography. Miller asserts that the appellate panel appropriately found that the crimes were reasonably proximate in time and place and that his use of the peer-to-peer file-sharing system was a necessary ingredient and an integral part of both his possession and distribution of the child pornography.
Miller cites to State v. Lyons, 417 N.J. Super. 251, 255-56, 263, 9 A.3d 596 (App. Div. 2010), observing that the Appellate Division **28 held that the defendant had distributed child pornography via peer-to-peer file-sharing because "[t]he court found that the downloaded items were immediately placed into the defendant's shared folder, and that the accessibility of the defendant's shared folder to other users of the network constituted distribution." Miller argues that, as was the case in Lyons, the moment he downloaded child pornography on the peer-to-peer network, it was automatically put into his shared folder where it was available to others.
Miller finally asserts that his possession and distribution of the child pornography were reasonably proximate in time and place because all of the downloads occurred in a roughly six-month timeframe from an IP address associated with his home, and a forensic examination of his computers showed that only one computer appeared to be used for pornography.
III.
We first consider the trial court's application of aggravating factor one in sentencing Miller.
A.
"Appellate review of a sentence is generally guided by the abuse of discretion standard." State v. Robinson, 217 N.J. 594, 603, 92 A.3d 656 (2014). "[A]ppellate courts are cautioned not to substitute their judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65, 103 A.3d 237 (2014). Rather, an
appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
[ Fuentes, 217 N.J. at 70, 85 A.3d 923 (alteration in original) (quoting *110 State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984) ).]
The general deference to sentencing decisions includes application of the factors set forth in N.J.S.A. 2C:44-1(a) and (b) : appellate courts do not " 'substitute [their] assessment of aggravating and mitigating factors' for the trial court's judgment."
**29 State v. Miller, 205 N.J. 109, 127, 13 A.3d 873 (2011) (quoting State v. Bieniek, 200 N.J. 601, 608, 985 A.2d 1251 (2010) ). "Permitting appellate courts to substitute their factual findings for equally plausible trial court findings is likely to 'undermine the legitimacy of the [trial] courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.' " State v. S.S., 229 N.J. 360, 380-81, 162 A.3d 1058 (2017) (alteration in original) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment). "[T]he public's interest in 'stability and judicial economy' is promoted by designating our trial courts, rather than appellate courts, as 'the finder of the facts,' in the absence of clear error." Id. at 381, 162 A.3d 1058 (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment).
B.
Aggravating factor one requires the trial court to consider "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1). When applying factor one, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609, 70 A.3d 647 (2013) (quoting State v. Hodge, 95 N.J. 369, 379, 471 A.2d 389 (1984) ).
"When it assesses whether a defendant's conduct was especially 'heinous, cruel, or depraved,' a sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." Fuentes, 217 N.J. at 74-75, 85 A.3d 923. As this Court has observed:
In State v. Yarbough, 100 N.J. 627, 633 [498 A.2d 1239] (1985), we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence.
**30 We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. Ibid. If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.
[ State v. Kromphold, 162 N.J. 345, 353, 744 A.2d 640 (2000) (discussing Yarbough ).]
Nevertheless, "[a] sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.' " Fuentes, 217 N.J. at 75, 85 A.3d 923 (alteration in original) (quoting Henry, 418 N.J. Super. at 493, 14 A.3d 750 ). Thus, "[i]n appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense." Ibid.; see, e.g., *111 State v. Mara, 253 N.J. Super. 204, 214, 601 A.2d 718 (App. Div. 1992) (affirming the sentencing court's application of aggravating factor one when, in an aggravated assault case, "the serious injuries were far in excess of that required to satisfy" the crime's statutory elements).
State v. Taylor further illustrates the point. 226 N.J. Super. 441, 453-54, 544 A.2d 883 (App. Div. 1988). In that case, "the conviction itself required that [the] defendant have 'sexual contact with a victim who [was] less than 13 years old,' " but the age of the victim, the defendant's four-year-old niece, led the appellate court to conclude that "[t]he extreme youth of the victim was a proper aggravating factor to have been considered by the [sentencing] court" in applying aggravating factor two.[6] Id. at 453, 544 A.2d 883. In applying aggravating factor two in that case, the sentencing court reasoned, "While the element of age is included within this crime, I don't think it completely blankets it, and I think there **31 is some consideration given to the seriousness of harm inflicted on someone of this age." Ibid. The Appellate Division affirmed. Id. at 454, 544 A.2d 883.
C.
At the time Miller committed the relevant offenses in this case, the statute he violated defined a "child" as any person under sixteen years old and prohibited the possession of material depicting a child engaging in a "prohibited sexual act," defined as "sexual intercourse" and "nudity," among other things. N.J.S.A. 2C:24-4 (2012). At Miller's sentencing hearing, the court explained that the child pornography found on defendant's computer
depicted rape essentially, penetration, bondage, really horrific displays of ... cruel treatment to these children. I reiterate there was one that a bag was placed over the young girl's head. There was ... an adult penis entering a very young girl's vagina. Multiple ... incidents of real people, real children. An infant with a ... [pacifier] in her mouth whose genitalia ... is exposed and ... displayed, and many others.
We hold that the extraordinary brutality depicted in defendant's pornography demonstrated that his possession and distribution of such content extended to the extreme reaches of the behavior prohibited by N.J.S.A. 2C:24-4. We further find that the trial judge appropriately considered the victims' ages when applying aggravating factor one. Like the statute at issue in Taylor, N.J.S.A. 2C:24-4 contained an element of age. However, that element did not preclude consideration of the victims' ages for sentencing purposes because it did not distinguish between a sixteen-year-old girl who sends an explicit photo to her fifteen-year-old boyfriend and an individual who acquires violent child pornography involving the sexual assault of toddlers.
We disagree with Miller's argument that it is "hard to imagine how a finding of extreme youth could be made with clarity in child pornography cases because ... the real ages of the children depicted are generally unknown." New Jersey courts have held that, "[l]ike any other fact, age is, of course, for the determination of the [factfinder]," and "whether the age of a model in a child **32 pornography prosecution can be determined by a [factfinder] without *112 the assistance of expert testimony ... must be determined on a case by case basis." State v. May, 362 N.J. Super. 572, 594, 829 A.2d 1106 (App. Div. 2003) (ellipsis in original) (first quoting State v. Carlone, 109 N.J.L. 208, 211, 160 A. 551 (Sup. Ct. 1932) ; then quoting United States v. Katz, 178 F.3d 368, 373 (5th Cir. 1999) ).
The immaturity and extreme youth of the victims in this case allowed the trial judge to determine that "infants" and "very young children" were caused to engage in sexual activities, one of whom had a pacifier in her mouth. The judge further acknowledged that the victims in defendant's child pornography "were all quite young, quite, quite young," and that the "little girls and boys" depicted were "treat[ed] as if they were not people, as if they were mere objects."
We agree with the State that the appellate panel's opinion in this case deprives trial judges of their discretion to make nuanced assessments of the nature and circumstances of offenses involving child pornography. Accordingly, we reverse the judgment of the Appellate Division as to this issue and next consider whether the sentences were subject to merger.
IV.
A.
As to the consecutive sentences imposed here, where a defendant receives more than one sentence of imprisonment "for more than one offense ... such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a). State v. Brown sets forth this Court's general approach to merger issues:
We follow a "flexible approach" in merger issues that "requires us to focus on the 'elements of the crimes and the Legislature's intent in creating them,' and on 'the specific facts of each case.' " The overall principle guiding merger analysis is that a defendant who has committed one offense "cannot be punished as if for two." Convictions for lesser-included offenses, offenses that are a necessary component of **33 the commission of another offense, or offenses that merely offer an alternative basis for punishing the same criminal conduct will merge.
[ 138 N.J. 481, 561, 651 A.2d 19 (1994) (citations omitted).]
Such an approach entails
[the] analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
[ Davis, 68 N.J. at 81, 342 A.2d 841.]
Guidance also arises from the principle that "the Legislature may fractionalize a single criminal episode into separate offenses when the Legislature intends them to be punished separately and when the fractionalization does not offend constitutional principles." State v. Mirault, 92 N.J. 492, 504, 457 A.2d 455 (1983). Stated differently, "the [L]egislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately." Davis, 68 N.J. at 78, 342 A.2d 841.
In Davis, this Court considered the issue of merger in the context of the crimes of possession and distribution of a controlled dangerous substance, and found them to be separate offenses subject to separate punishments. Ibid. In that case, this Court *113 explained that if a defendant's "possession were contingent upon and inseparable from the sale itself, a 'mere fleeting and shadowy incident of the sale,' then only one offense ha[d] been committed." Id. at 83, 342 A.2d 841. The Davis Court cited to Laughter v. State, 241 So.2d 641 (Miss. 1970), which it found to be "illustrative of this merger." Davis, 68 N.J. at 83, 342 A.2d 841. The Davis Court described the facts of Laughter as follows:
[T]he defendant procured marijuana at the request of an undercover agent who had given [the] defendant money with the express intent of consummating a sale to the agent. Defendant was prosecuted and convicted for possession of marijuana. He was subsequently prosecuted in a second trial for sale to the agent of the same marijuana. In stating that the possession for which there had already been a conviction was inextricably tied to that sale, the Supreme Court of Mississippi reversed the conviction for sale, holding that prosecution therefor was barred by the earlier proceeding. That court hastened to add, however, that if [the] defendant **34 had, after an offer to purchase from the agent, gone to a location where the same amount of marijuana was concealed and then sold it to the officer, both convictions would be sustained.
[ Ibid. (discussing Laughter, 241 So.2d at 644 ).]
The Davis Court then detailed how the facts of the case before it differed from the facts in Laughter, explaining that there was "ample evidence to support the conclusion that Davis was not engaged in 'fleeting and shadowy' possession preceding and purely incidental to imminent distribution, as would be true of an agent of or go-between for a seller," but rather was in possession for a "substantial period of time separate and apart from his possession merely incident to a particular imminent sale." Id. at 83-84, 342 A.2d 841.
B.
In this case, Miller was charged with possessing child pornography between May 29, 2009, and February 1, 2012; and distributing child pornography between June 13, 2011, and February 1, 2012. Thus, prior to the period during which Miller began to distribute the pornography, there was a period of over two years in which he possessed it but had not yet distributed it. This directly conflicts with Miller's theory that the possession and distribution of his child pornography was "coincidental," and that the two offenses "were reasonably proximate in time."
Further, in addition to the over 900 child pornographic images and videos stored on Miller's computer, there were eleven CDs and DVDs containing photographs and video recordings of child pornography that were found inside his home, separate from the pornography on his computer. Miller's possession of those CDs and DVDs contradicts his argument that his "use of the file-sharing programs was a necessary ingredient and integral part of both his possession of the child pornography and the means by which he made it accessible to others."
The record contains ample evidence supporting the trial court's conclusion that Miller was not engaged in "fleeting" possession **35 preceding and purely incidental to the imminent distribution of the child pornography, but was instead in possession of the pornography for a substantial period of time separate and apart from his distribution of pornography. The possession and distribution offenses were therefore distinct and the trial court appropriately determined that they did not merge for sentencing purposes. *114 V.
Accordingly, we reverse the judgment of the Appellate Division and reinstate Miller's sentence.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Since Miller's indictment, N.J.S.A. 2C:24-4(b)(5)(b) has been amended. L. 2013, c. 51 made a violation of that section a third-degree offense.

We denied Miller's cross-petition for certification. 233 N.J. 483, 186 A.3d 898 (2018).

At the time of Miller's offense, the term "child" was defined by N.J.S.A. 2C:24-4b(1) as "any person under 16 years of age." In 2013, the Legislature amended the statute by increasing the benchmark age of "child" from 16 to 18 years of age. L. 2013, c. 136; see also In re Cohen, 220 N.J. 7, 17-18, 100 A.3d 529 (2014) (discussing the amendment).

According to Miller's indictment, his possession of the child pornography actually began much earlier, starting on May 29, 2009.

See N.J.S.A. 2C:44-1(a)(2) (providing that courts should consider "[t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance").