**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4489-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GREGORY KING, a/k/a
GREGG GREGORY,

     Defendant-Appellant.

_____

Submitted February 6, 2019 – Decided July 8, 2019

Before Judges Nugent and Reisner.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 14-02-0074, 14-10-0840, and 16-10-0822.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Robert J. Wisse, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a jury convicted defendant, Gregory King, of four controlled dangerous substance (CDS) offenses and resisting arrest, he pled guilty to two additional CDS offenses charged in two other indictments. For his crimes, a judge sentenced him to an aggregate prison term of eight years with three years and four months of parole ineligibility. On appeal, he seeks a new trial and a lesser sentence. He argues the following points:

POINT I

> THE COURT'S FAILURE TO PROVIDE A COMPLETE IDENTIFICATION INSTRUCTION DENIED DEFENDANT HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

POINT II

> THE TRIAL COURT'S FLIGHT INSTRUCTION WAS FLAWED IN THAT IT FAILED TO INSTRUCT THE JURY THAT THE INFERENCE OF CONSCIOUSNESS OF GUILT DID NOT APPLY TO THE RESISTING ARREST BY FLIGHT CHARGE. (Not Raised Below).

POINT III

> DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.
>
> A. The Sentence Imposed.
> B. The Extended Terms.
> C. The Aggravating Factors Found.
> D. The Aggregate Sentence Imposed.

For the reasons that follow, we affirm.

A-4489-16T4

## I.

## A.

In a seven-count indictment, No.14-02-0074, a Passaic County grand jury charged defendant with five third-degree CDS offenses: possession of a CDS, heroin, N.J.S.A. 2C:35-10(a)(l) (count one); distribution of a CDS, heroin N.J.S.A. 2C:35-5(a)(l) and (b)(3) (count two); distribution of a CDS, heroin, within 1000 feet of school property, N.J.S.A. 2C:35-7 and -5(a) (count three); possession of a CDS, less than one-half ounce of heroin, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3) (count four); and possession of a CDS, heroin, with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 and -5(a) (count five). In the indictment's sixth count, the grand jury charged defendant with fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2). In the seventh count, the grand jury charged co-defendant, Larry Cox, with third-degree possession of a CDS, heroin, N.J.S.A. 2C:35-10(a)(1).

In October 2016, at the conclusion of defendant's trial, a jury found him guilty of the CDS offenses charged in the indictment's first three counts, as well as disorderly persons wandering with intent to obtain or distribute a CDS, N.J.S.A. 2C:33-2.1(b), a lesser included offense to count four. The jury found defendant not guilty of count five and guilty of count six, resisting arrest.

Following the verdict, the trial court denied defendant's motion for a judgment of acquittal. Thereafter, defendant pled guilty to the two other CDS offenses: Passaic County Indictment No. 14-10-0840, possession of CDS, heroin, with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 and -5(a) (count three); and, Passaic County Indictment No. 16-10-0822, third-degree possession of a CDS, heroin, N.J.S.A. 2C:35-10(a)(1) (count one). In accordance with the plea agreements, the State dismissed the remaining counts in those indictments.

The trial court sentenced defendant on all counts during the same proceeding. On Indictment No. 14-02-0074, the charges tried by the jury, the court granted the State's motion for a mandatory extended term, N.J.S.A. 2C:43:6(f), on count three, third-degree distribution of a CDS within 1000 feet of school property. After merging count two with count three, the court sentenced defendant on count three to an eight-year prison term and imposed a three year and four-month period of parole ineligibility. The court imposed concurrent sentences of four years on count one, four months on count four, and one year on count six.

On the third count of Indictment No. 14-10-0840, possession of a CDS within 1000 feet of school property, the court sentenced defendant to an

extended term of eight years with three years and four months parole ineligibility. On the first count of Indictment No. 16-10-0822, possession of a CDS, the court sentenced defendant to a four-year prison term. The sentences on the offenses to which defendant pled guilty are concurrent to each other and to the sentence imposed on the offenses for which the jury convicted defendant. In addition to the prison terms, the court imposed appropriate fines, penalties and assessments with each sentence.

B.

The State presented the following evidence at defendant's jury trial. Law enforcement officers from the Paterson Police Department's Narcotics Division arrested defendant shortly after 7:00 on a June evening in 2013. The officers were in unmarked vehicles and plain clothes, but wore police vests or badges.

Sergeant Thomas Trommelen was conducting surveillance from the vehicle he had parked on Carroll Street, approximately one hundred feet north of its intersection with Godwin Avenue. Co-defendant, Larry Cox, caught his eye. Standing on the intersection's corner, Cox wore a purple hat, yellow vest, blue jersey, and purple shorts; the attire of a Laker's fan, Trommelen thought.

Looking through binoculars, Trommelen saw defendant walk up to Cox. Defendant was wearing a red shirt and dark-colored cargo shorts. Defendant

held something in his hand and appeared to be "counting or separating something." Trommelen saw defendant hand Cox the small objects, and Cox handed defendant money. Defendant placed the remaining objects he held in his hand into the waist of his pants, and he put the money Cox gave him into his left pants pocket.

Believing he had probable cause to stop defendant and Cox, Trommelen alerted the backup team. Two vehicles converged on the intersection. Cox did not try to escape. Defendant ran.

When Detective Paul Miccinelli, who was driving one of the backup vehicles, stopped at the intersection, defendant looked at him, stepped back, and said "[c]ome on man." Miccinelli responded, "[d]on't do it[,] . . . stop. Police. Don't do it." Defendant ignored Miccinelli and began to run down Godwin Avenue. Miccinelli turned the car in defendant's direction and pursued him. Two other detectives pursued defendant on foot. The officers caught defendant and arrested him after a brief struggle. The officers patted defendant down for weapons but did not search him. They called for a transport unit to take defendant to police headquarters for processing.

Meanwhile, back at the intersection of Carroll Street and Godwin Avenue, detectives informed Cox they were conducting an investigation. Cox turned

6

over to them four glassine bags of heroin. The officers placed Cox in the rear of their transport vehicle. The officers operating the vehicle picked up defendant and transported him and Cox to headquarters.

While being processed at headquarters, defendant complained his handcuffs were too tight. The officers removed the handcuffs. Shortly thereafter, Detective Miccinelli saw defendant reach down into the front of his pants, remove something, "and kind of put it back towards his buttocks area." Detectives forcibly removed from defendant's hand two glassine envelopes of heroin.

In addition to the heroin, the police seized from defendant $771 in cash. The cash included two fifty-dollar bills, nineteen twenty-dollar bills, eight ten-dollar bills, eighteen five-dollar bills, and one hundred twenty-one one-dollar bills.

The parties stipulated that the intersection of Carroll Street and Godwin Avenue is located within 1000 feet of an operable public school. They also stipulated the substances the officers recovered were determined through forensic analysis to contain "Diacetylmorphine, heroin, a Schedule I [CDS]." The quantity of heroin was less than one-half ounce.

A-4489-16T4

Defendant did not testify. He presented the testimony of three witnesses. Co-defendant, Cox, testified for defendant. Cox had a prior conviction for possessing CDS with intent to distribute within 1000 feet of a school zone, for which he had been sentenced to a seven-year prison term with a three-year period of parole ineligibility. He disclosed the prior conviction to the jury, and also disclosed there was a pending charge in the current case, as well as a bench warrant for his arrest. Nonetheless, he came to court voluntarily to testify for defendant.

Recounting the night the detectives arrested him and defendant, whom Cox had known for a few years, Cox said he was standing on the corner of Carroll and Goodwin and saw defendant walk through. When the police drove up, they jumped out of their cars and arrested him. One of the officers demanded: "[W]here is it." In response, Cox gave police five glassine envelopes of heroin. The police arrested him, placed him in a car, picked up defendant, and eventually drove to the precinct.

Cox testified he did not purchase the heroin from defendant. Cox explained that the previous night, he had purchased ten bags of heroin but had used only five. He stated emphatically he did not purchase the heroin from defendant, and he did not give defendant money.

A-4489-16T4

Defendant presented the testimony of a woman who had known him for approximately eleven years. She told the jury that in the middle of June, 2013, defendant had spent three or four days painting her apartment. In return, she paid him $410 in cash, mostly in twenty-dollar bills.

Defendant also presented the testimony of a man he had known for approximately ten years. The man testified that in the middle of June, 2013, defendant had painted his apartment over the course of a week. The man paid defendant $320 in cash, in ten-dollar, five-dollar, and fifty or sixty one-dollar bills.

Defendant's theory of the case, which his attorney stressed repeatedly during his summation, was that the police lied and made up the story. Defense counsel suggested it was preposterous that a white man of Sergeant Trommelen's size could sit in a parked car, in a predominantly African-American neighborhood, peering through binoculars, and not stand out like the proverbial sore thumb and be recognized; and even more preposterous that a drug dealer would transact business where Trommelen could observe what was happening. Defense counsel argued, "And why did they make it up? That's not for me to . . . explain to you why they did it, but what you can decide and what you can look at is what they did."

9

Defense counsel did not argue that the officers had somehow mistaken defendant for someone else.  To the contrary, he acknowledged that co-defendant Cox was talking to defendant.  Defense counsel stressed that Trommelen "didn't observe the hand-to-hand transaction because there wasn't a hand-to-hand transaction because that's what you have [co-defendant] Cox to testify to and who knows better than the two people that are arrested and the two people that are involved?"  The jury rejected this defense.

## II.

Defendant argues two points in an attempt to have the jury's verdict overturned.  First, he argues that the trial court failed to provide "a complete identification instruction."  Second, he argues the trial court's flight charge was flawed because the court did not explain that the charge did not apply to the resisting arrest count.  Except for the brief comments that follow, defendant's arguments are without sufficient merit to warrant discussion.  R. 2:11-3(e)(2).

Defendant raised neither argument before the trial court.  When a defendant raises an issue for the first time on appeal, we review the action or omission complained of for plain error.  R. 2:10-2.  Under this standard of review, we disregard any error or omission "unless it is of such a nature as to have been clearly capable of producing an unjust result[.]"  Ibid.  The error must

have been "sufficient to raise a reasonable doubt as to whether the errors led the jury to a result it otherwise might not have reached[.]"  State v. McGuire, 419 N.J. Super. 88, 106-07 (App. Div. 2011) (quoting State v. Taffaro, 195 N.J. 442, 454 (2008)).

"Plain error is a high bar. . . ."  State v. Santamaria, 236 N.J. 390, 404 (2019).

> A defendant who does not raise an issue before a trial court bears the burden of establishing that the trial court's actions constituted plain error because to rerun a trial when the error could easily have been cured on request[] would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal.
>
> [Id. at 404-05. (alteration in original) (citations omitted).]

In neither of his arguments has defendant demonstrated error, let alone plain error.  The trial court's charge on identification was more than adequate. Defendant likely did not take exception to the trial court's charge on identification, because defendant did not claim at trial that identification was an issue.  He hardly could have done so, considering the testimony of not only the law enforcement officers, but also defendant's witness, co-defendant Cox.

Defendant did not deny either his presence at the intersection or his arrest a short distance away.  Nor did he contend that a dealer sold Cox drugs and

somehow the police mistook him for the dealer. Considering defendant's defense, the trial court's charge on identification was not error, let alone error of such magnitude that it was clearly capable of producing an unjust result.

Nor was the trial court's charge on flight error. The trial court's omission to explain that its instruction as to flight did not apply to the resisting arrest count could hardly have confused the jury under the facts presented by the parties, let alone led the jury to a result it otherwise might not have reached on the CDS counts.

### III.

In his final argument, defendant submits the trial court erred "in imposing two extended term sentences during one sentencing hearing; [believing] the minimum base-term . . . for the extended term was five years; double-count[ing] defendant's prior record . . .; and impos[ing] a sentence that was excessive in light of the offenses." We disagree.

We review a trial court's imposition of a sentence for abuse of discretion. State v. Robinson, 217 N.J. 594, 603 (2014). The Supreme Court has cautioned that "appellate courts are . . . not to substitute their judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014). If a sentencing court has followed the sentencing guidelines, based its determination of aggravating

and mitigating factors on competent, credible evidence, and applied the sentencing guidelines to the facts of the case in a manner that does not make the sentence so clearly unreasonable so as to shock the judicial conscience, an appellate court must affirm the sentence. State v. Miller, 237 N.J. 15, 28 (2019) (citation omitted).

If a person such as defendant is convicted of possessing with intent to distribute a CDS, or of distributing or dispersing or possessing with intent to distribute a CDS on or near school property, and has previously been convicted of distributing, dispensing or possessing with intent to distribute a CDS, the person is subject to an extended-term sentence   N.J.S.A. 43:6(f).

Defendant concedes "that his prior record consisting of fourteen indictable convictions, including six prior narcotics convictions . . ., exceeds that necessary for eligibility for the mandatory extended term on Count Three of Indictment No. 074." He argues, however, the trial court erred by imposing a concurrent extended term on the third count of Indictment No. 14-01-0840. We disagree.

N.J.S.A. 2C:44-5(a)(2) provides that "[n]ot more than one sentence for an extended term shall be imposed" when multiple sentences of imprisonment are imposed on a defendant for more than one offense." However, in contrast to discretionary extended terms, "[a] defendant may be sentenced to multiple

mandatory extended terms in the same proceeding." State v. Robinson, 217 N.J. 594, 597 (2014) (citing State v. Connell, 208 N.J. Super. 688, 697 (App. Div. 1986)).

Next, defendant argues the State did not file a motion for an extended term as to Indictment No. 14-10-0840. He also argues the sentencing court provided no reasons for imposing the extended term on that indictment, and mistakenly assumed that the sentencing range for the extended term began at five years.

We also reject these arguments. The extended term on the count in Indictment 14-10-0840 resulted from a negotiated plea, in which the plea form specified the extended term. Rule 3:21-4(e) states expressly that "[i]f the negotiated disposition includes the recommendation of an extended term, the prosecutor's oral notice and the recordation of the extended term exposure in the plea form completed by defendant and reviewed on the record shall serve as the State's motion."

Defendant's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                                    A-4489-16T4