**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0934-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ERNEST P. DAVIS,

     Defendant-Appellant.

_____

        Submitted November 15, 2018 – Decided  September 12, 2019

        Before Judges Alvarez and Nugent.

        On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 15-12-0988.

        Joseph E. Krakora, Public Defender, attorney for appellant (Margaret R. McLane, Assistant Deputy Public Defender, of counsel and on the briefs).

        Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for appellant (Gretchen A. Pickering, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

For pointing a shotgun at the victim, his girlfriend, and blowing off her left foot, defendant, Ernest P. Davis, was indicted for and convicted of attempted murder, aggravated assault, a weapons offense, and hindering apprehension. For those crimes, a judge sentenced him to an aggregate prison term of thirty-eight years. On this appeal, he argues the following points:

POINT I

THE ERRONEOUS INSTRUCTION ON ATTEMPT REQUIRES REVERSAL OF DEFENDANT'S ATTEMPTED MURDER CONVICTION.

POINT II

DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE COURT AUTHORIZED THE PROSECUTOR TO INTRODUCE 404(B) "EVIDENCE" IN SUMMATION THAT WAS NOT ADMITTED AT TRIAL.

POINT III

THE COURT HAD NO AUTHORITY TO SANITIZE THE PRIOR CONVICTION OF A STATE'S WITNESS. THIS ERRONEOUS EVIDENTIARY RULING DEPRIVED DEFENDANT OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL, REQUIRING REVERSAL OF HIS CONVICTIONS.

POINT IV

THE 38-YEAR NERA EXTENDED TERM SENTENCE IS MANIFESTLY EXCESSIVE.

Finding no merit in defendant's arguments, we affirm.

## I.

## A.

A Cape May County grand jury charged defendant in a five-count indictment with the following crimes: first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1) (Count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (Count two); second-degree possession of a shotgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count three); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b) (Count four); and second-degree certain persons not to have firearms, N.J.S.A. 2C:39-7 (Count five).

Before trial, the court deferred a decision on whether the State could introduce under N.J.R.E. 404(b) defendant's out-of-state conviction for pointing a shotgun at a woman—to prove intent or the absence of accident or mistake, but only if defendant raised one of those defenses. Following the close of the evidence, the court ruled the prosecutor could introduce the conviction in his summation if defendant raised a defense of accident or mistake in his summation. Defendant argued in summation that the shotgun could have accidentally discharged, but the prosecutor did not mention the prior conviction

3

in his closing argument, so the limiting instruction the court had prepared became a moot point.

The court also ruled defendant could impeach the victim with a "sanitized" 2001 third-degree arson conviction—for which the victim was released from prison more than ten years earlier—by referring to the victim's conviction of a third-degree crime for which she was sentenced to serve four years in prison. The court barred defendant from disclosing the conviction was for arson.

Defendant's June 2017 trial—on all but the certain persons count— culminated with the jury convicting him on all charges for which he was tried, Counts one through four. In a separate non-jury trial, the court acquitted defendant of the certain persons offense.

The State moved to sentence defendant to an extended term as a persistent offender pursuant to N.J.S.A. 2C:43-7 and 2C:44-3(a). The court granted the State's motion and sentenced defendant on Count one, attempted murder, to a thirty-eight-year prison term subject to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. The court merged Count two, aggravated assault, and imposed concurrent prison terms of nine years for possession of the shotgun for an unlawful purpose, Count three, and four years for hindering apprehension, Count four.

A-0934-17T1

This appeal followed.

B.

The State presented the following evidence at trial.  Defendant and the victim, his girlfriend, had been dating for approximately one year.  Defendant lived and worked on a boat named The Storm, which was docked in Lower Township.  A fishing vessel, the Miss Tamara, was docked behind The Storm.  The Storm was the scene of the shooting.  The shooting occurred on a night of heavy rain and wind.

According to the victim's trial testimony, except for a walk to a package goods store or bar to buy beer, she and defendant were together on The Storm from early in the afternoon until the shooting, which occurred between 10:00 and 10:30 that night.  During their time on The Storm, they drank, watched television, and argued.  The arguing began when the victim refused to have sex with defendant, escalated throughout the evening and night, and ended with the shooting.

Throughout the evening, defendant repeatedly threatened to harm the victim, but she did not leave the boat because she did not think he was serious.  She thought differently when he retrieved the shotgun he kept on the boat and

5

threatened to shoot her, pointing the shotgun at her face. When he walked away, she called and texted her sister to come and get her because she was afraid defendant would kill her.

The victim finally attempted to leave The Storm. She testified she started climbing over a rail from The Storm onto the other boat, Miss Tamara, when defendant shot her. Immediately before pulling the trigger, defendant told the victim he was going to shoot her. He aimed the gun at her leg and fired. As the victim screamed, defendant kissed her on the forehead, said he was sorry, and left. Police responded, and the victim was transported to the hospital, where doctors amputated her left leg from the middle of the calf down.

A man who was staying on the Miss Tamara heard defendant and his girlfriend arguing. He saw defendant go inside the boat and come out with the shotgun. The man heard the shooting. Shortly thereafter, defendant boarded the Miss Tamara while holding a shotgun, told the man he had shot his girlfriend's leg, and asked the man to get rid of the gun. The man refused but boarded The Storm, where he saw the victim sitting on a rail of the boat. He said "[h]er foot was shot off of her leg." The man called 9-1-1 but encountered police before completing the call.

A-0934-17T1

The victim's sister testified about the message she had received from the victim, which prompted her to call the police. Two days after the shooting, police recovered the shotgun from the water beneath the left, back side of the Miss Tamara.

Defendant did not testify. He presented no evidence.

## II.

## A.

Defendant first argues the trial court instructed the jury incorrectly on attempted murder and the error requires reversal of his conviction. We disagree.

The court instructed the jury, "[i]n order for you to find the defendant guilty of an attempted murder the State must prove beyond a reasonable doubt that it was the defendant's purpose to cause the death of the victim." The court continued:

> More specifically, the law provides that a person [is] guilty of an attempt to commit the crime of murder if the person purposely engaged in conduct which was intended to cause the death of the victim if the attendant circumstances were as a reasonable person would believe them to be. Thus, in order to find that the defendant guilty of the crime of attempted murder the State must prove the following elements beyond a reasonable doubt. First, it was the defendant's purpose to cause the death of [the victim]. Secondly, the defendant purposely engaged in conduct which was intended to cause the death of the victim if the attendant

7

circumstances were as a reasonable person would believe them to be.

The court further instructed the jury that "[t]he use of a deadly weapon such as a shotgun in itself may permit you to draw an inference that the defendant's purpose was to take a life." The court explained:

> If the defendant's conduct would have caused the death of the victim, had the facts been as a reasonable person would have believed them to be, you should consider that conduct as evidence of the guilt of the attempt to purposely cause the victim's death. It does not matter that the defendant was frustrated in accomplishing his objective because the facts were not as a reasonable person would believe them to be. It is no defense that the defendant could not succeed in reaching his goal because of circumstances unknown to the defendant. In order for you to find the defendant guilty of an attempted murder the State must prove beyond a reasonable doubt that it was the defendant's purpose to cause the death of the victim.

During the charge conference, the court reviewed with counsel the instruction it intended to give on attempted murder. Defendant did not object at the time, nor did defendant object after the court instructed the jury. A defendant's failure at trial to object to the charge gives rise to "a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 334-34 (1971)). Thus, in the absence of a timely objection at trial, we review a

defendant's challenge to a charge for plain error, that is, error that is "clearly capable of producing an unjust result." R. 2:10-2. To establish plain error, a defendant must demonstrate a "'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" Singleton, 211 N.J. at 182-83 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

The New Jersey Code of Criminal Justice defines three categories of attempt:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
>
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
>
> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

9

b. . . . Conduct shall not be held to constitute a substantial step under subsection a. (3) of this section unless it is strongly corroborative of the actor's criminal purpose.

[N.J.S.A. 2C:5-1(a) to (b).]

We have previously explained the meaning of each category:

Type a(1) concerns a completed crime which fails of its purpose because the facts are not as defendant believes them to be. See State v. Condon, 391 N.J. Super. 609, 616 (App. Div.) (citing as an example, performing an illegal abortion on a woman who turns out not to be pregnant), certif. denied, 192 N.J. 74 (2007). Type a(2) involves a situation "'where the criminal act is very nearly complete and requires one more step either beyond the actor's control or not requiring his control for completion.'" Id. at 615-16 (quoting Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:5-1 (2006)). Type a(3) requires that the actor, with intent to commit the crime, takes a substantial step toward its commission. Id. at 616.

[State v. Kornberger, 419 N.J. Super. 295, 302 (App. Div. 2011).]

The trial court charged type a(1). Defendant argues the State's evidence did not support type a(1) attempt, commonly referred to as "impossibility" attempt, and he was thus deprived of his constitutional right to a unanimous verdict on every element of the crime of attempted murder.

The State responds that type a(1) attempt concerns a completed crime which fails of its purpose because the facts are not as defendant believes them

10

to be. The State asserts this is the situation here, because when defendant shot the victim, he did not know the victim's sister had notified the police, or that the police would arrive and provide the victim with medical attention before she bled to death. Alternatively, the State argues that even if erroneous, charging a non-applicable type of attempt did not constitute plain error.

In State v. Condon, we noted:

> In order to complete a criminal act under subsection a(1), a defendant would have to have taken a substantial step toward the commission of the crime under subsection a(3). Accordingly, under subsection a(1), where a defendant "purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be," we are satisfied that he or she could also be charged under subsection a(3).
>
> [391 N.J. Super. at 617.]

In the case before us, the jury could not have convicted defendant of type a(1) attempted murder without having found he took a substantial step toward its commission. Moreover, the State's evidence that defendant committed attempted murder was overwhelming and unrefuted by defendant. The victim testified defendant pointed a shotgun at her and told her he was going to shoot her immediately before he opened fire at nearly point blank range. He then left her bleeding, unable to walk because her lower left leg had been destroyed by

11

the blast, while he attempted to solicit help from a neighboring boat's occupant to conceal the shotgun. Considering these unrefuted proofs, defendant has failed to overcome the presumption that the charge was unlikely to prejudice his case. Singleton, 211 N.J. at 182. He certainly has not demonstrated a legal impropriety in the charge that prejudicially affected his substantial rights and was sufficiently grievous to convince us that of itself the error possessed a clear capacity to bring about an unjust result. Id. at 182-83; R. 2:10-2.

### III.

Except for the following comments, we find defendant's second and third arguments to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

In his second argument, defendant contends the court's decision that the prosecutor could introduce defendant's out-of-state conviction for pointing a shotgun if defendant argued the absence of intent, mistake, or accident in his summation, "tied defense counsel's hands and prevented him from being able to fully present [the] defense—that he lacked the intent to kill [the victim]." There are two flaws in the argument. First, the record belies the argument. Defendant argued to the jury that if he wanted to kill a person, he would not have pointed the shotgun at the person's foot. Rather, he would "aim directly at them."

A-0934-17T1

Defendant also suggested the jury could conclude he had no intention other than to scare the victim. He told the jury:

> That's one of your calls. Was this a situation where they were both drunk and the boats are rocking? It's a stormy night, did he accidentally pull[] the trigger? . . . That's a decision you're going to have to make in terms of reaching both the decision on the attempted murder charge, as well as the aggravated assaulted charge.

Defendant emphasized these points at the conclusion of his summation.

Second, in his summation, the prosecutor did not mention defendant's prior conviction. Defendant nevertheless claims the court's ruling tied his counsel's hands. Not only is the argument belied by the record of counsel's closing argument, there is no competent evidence anywhere in the record to support this allegation. Defendant's appellate counsel is not the attorney who represented defendant at trial. There is no evidence on the record that trial counsel would have given a different summation had the court not made the ruling it did. In short, the argument amounts to nothing more than speculation.

Defendant's third argument—the court did not have authority to sanitize the victim's prior conviction for arson—is also without merit. The court, in its discretion, could have excluded the statement entirely. Moreover, the court admitted the prior conviction under N.J.R.E. 609 (Impeachment by Evidence of Conviction of Crime), which by its terms is subject to Rule 403.

13

Trial courts are vested with broad discretion in determining whether proffered evidence should be excluded under N.J.R.E. 403 because its probative value is substantially outweighed by the risk of undue prejudice, confusion of issues, misleading the jury, or other considerations. State v. Outland, 458 N.J. Super. 357, 369 (App. Div. 2019). We discern no abuse of discretion in the trial court's admitting the prior conviction and sentence but not the specific crime.

Moreover, given the overwhelming and unrefuted evidence the State presented against defendant, even if the court misapplied its discretion—a conclusion we do not reach—the error would have been harmless. R. 2:10-2.

IV.

In his final argument, defendant contends his sentence was excessive for three reasons. First, defendant alleges the court impermissibly double counted aggravating factors when sentencing him in the extended term range. Next, defendant argues the court improperly relied on his conviction of the current offenses when it considered the extent of defendant's prior criminal record. Last, defendant argues the court failed to adequately explain or weigh its finding of the need to deter defendant and others.

We review the sentence the trial judge has imposed under an abuse of discretion standard. State v. Miller, 237 N.J. 15, 28 (2019). "'[A]ppellate courts

are cautioned not to substitute their judgment for those of our sentencing courts.'" Ibid. (alteration in original) (quoting State v. Case, 220 N.J. 49, 65 (2014)). For that reason, we must affirm the sentence unless a trial court has violated the sentencing guidelines, found aggravating or mitigating factors not based on competent and credible evidence in the record, or has applied the guidelines in such a manner as to "'make[] the sentence clearly unreasonable so as to shock the judicial conscience.'" Ibid. (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).

Our review of the record leads us to disagree with defendant's arguments. The court did not violate the sentencing guidelines, and the court's finding of the aggravating factors set forth in N.J.S.A. 2C:44-1(a)(6) & (9) are amply supported by credible evidence in the record. We find no impermissible double counting on the trial court's part. Moreover, considering the nature of defendant's previous convictions, his maiming of the victim in this case, and the trial court's reasons for imposing defendant's sentence, we cannot conclude the court's application of the sentencing guidelines to the facts of this case makes the sentence so clearly unreasonable as to shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15