**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3265-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAKI N. HOOKS-LEWIS,

     Defendant-Appellant.

_____

Argued March 18, 2025 – Decided April 7, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 20-03-0402 and 20-03-0403.

Alison Gifford, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Alison Gifford and Marcia Blum, Assistant Deputy Public Defender, of counsel and on the briefs).

Anthony J. Robinson, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Anthony J. Robinson, of counsel and on the brief).

PER CURIAM

Defendant Jaki Hooks-Lewis appeals his August 30, 2021 judgment of conviction, challenging the trial court's denial of his motion to suppress evidence seized without a warrant, jury instructions, and imposition of his sentence. After reviewing the record and prevailing law, we discern no error and affirm.

I.

Given the limited issues on appeal, we discern the salient facts from the record established at the suppression and sentencing hearings held by the trial court. East Brunswick Officers Thomas Soulias and Christian Longhitano testified at the suppression hearing, along with other witnesses.

According to Soulias, at approximately 10:50 p.m. on New Year's Day 2020, he stopped a Chevrolet Suburban after observing tinted front windows on the vehicle while it was traveling southbound on Route 18 at a "high rate of speed." Soulias could not see the driver because the front windows were rolled up and "completely tinted."

After Soulias pulled the vehicle over, he approached the passenger side of the Suburban and saw the windows were rolled down, observed an open bottle of Jack Daniels whiskey in the cupholder and smelled marijuana emanating from the vehicle. Soulias also saw a gas mask in plain view that, based on his training

A-3265-22

and experience, was used as a "bong" to smoke marijuana. Soulias and his partner Longhitano searched the interior of the Suburban, ultimately seizing a Jennings nine-millimeter handgun loaded with hollow-point bullets located in the center console; a ski mask defendant was wearing on the top of his head; and the gas mask.

The trial court denied defendant's motion to suppress, finding Soulias "had reasonable and articulable suspicion to believe that there was a motor vehicle violation" based on the tinted front windows, which violated N.J.S.A. 39:3-74. The trial court considered defendant's argument that Soulias could not have seen that the vehicle's windows were tinted while they were rolled up since the stop occurred at night, finding Soulias's testimony as to his reason for stopping the vehicle to be credible—considering his demeanor, candor and the corroborating motor vehicle recorder (MVR) video from Soulias's police vehicle.[1]

Trial proceeded on the charges of third-degree hindering, N.J.S.A. 2C:29-3(b)(4); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of a prohibited device, N.J.S.A. 2C:39-3(f); and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-

---

[1] The trial court also "m[ade] note that the officer, very easily, could have just said he pulled over the car because of speeding."

7(b)(1).

During his opening statement to the jury, defense counsel raised an unrelated armed-robbery in South River on December 31, 2019 as a potential motive for Soulias to stop defendant's vehicle. Defense counsel also raised this issue during Soulias's cross-examination, asking the officer whether he recalled making references to his partners about defendant "look[ing] like he's either a burglar or a robber," which Soulias denied. Defense counsel played the portion of the MVR footage for the jury, where Soulias' partner is heard audibly saying defendant "fits the bill. He's . . . wearing all black," and "is wearing a ski mask." The trial court overruled the State's relevancy and hearsay objections, explaining "[i]f the defense wants to open this door through allowing this then . . . you can . . . respond in any way you think is appropriate to put whatever he is impeaching the witness with in . . . context."

On cross-examination, defense counsel also elicited testimony from Soulias that he and his partners considered whether defendant could have been involved in the robbery, because he "matched the description" provided by fellow law enforcement and the handgun recovered from the Suburban was the same type used in the robbery. The trial court gave the following limiting instruction to the jury sua sponte after Soulias's cross-examination:

> The fact there is discussion about another crime . . . that was allegedly committed does not have . . . any reference to your deliberations in this particular case . . . . [T]he . . . only reason it is coming up is to give context as to what was meant by the phrase, "[f]its . . . the bill."

Neither defense counsel nor the State objected to the court's limiting instruction. On redirect, the State clarified defendant was never charged with any crimes associated with the robbery.

Defense counsel also questioned Officer Longhitano regarding the robbery on cross-examination, inquiring if he felt defendant could have been associated with the robbery, which Longhitano denied. Over the State's objection, defense counsel was permitted to play another portion of the MVR footage where two unidentified speakers are heard saying, "[y]o this is the kid who did the robbery last night . . . ." with the other speaker responding, "[o]h, yeah, [one hundred] percent . . . . He's got the ski mask on his head, he's got gloves in the car, a mask, plus a gun." After his recollection was refreshed, Longhitano recalled making the statements.

At the end of the case, the trial court instructed the jury on assessing witness credibility, explaining the jury's role "is to be judges of the facts . . . . [and the jury is] to determine the credibility of the various witnesses who

testified during this trial and the weight to be attached to the testimony of each witness."[2]  The trial court also referenced its prior limiting instruction stating:

> In this case, one of the limiting instructions I provided you had to deal with the testimony of an armed robbery that allegedly occurred in South River. That testimony was allowed in this case solely to provide context for statements made by the police. You cannot use any reference of alleged criminal activity that occurred in South River to determine the guilt or the innocence of the defendant as to the particular charges in this case.

Neither counsel objected to the charge.  The jury reached a unanimous verdict, finding defendant guilty on all counts, except for possession of a prohibited device, N.J.S.A. 2C:39-3(f).

After the jury convicted defendant, the trial court held a sentencing hearing.  The State requested the trial court impose an extended term under N.J.S.A. 2C:44-3(d),[3]  based on defendant's prior conviction under N.J.S.A.

---

[2]  The trial court instructed the jury it may consider the following credibility factors when evaluating witness testimonies including: "the appearance, demeanor, and how the witness testified; the witness' interest or bias; how the witness obtained knowledge of the facts and the ability to recall those facts; and all other matters of the evidence which serve to support or discredit the witness' testimony." The trial court also instructed the jury to "rely on [its] common sense and evaluate the testimony of a witness in the same way we evaluate, all the time, in everyday life, if someone is telling the truth."

[3]  N.J.S.A. 2C:44-3(d) states:

2C:12-1(b)(2), aggravated assault with a deadly weapon, for possessing a .40 caliber handgun and shooting a victim in the leg. The trial court found defendant's prior conviction under N.J.S.A 2C:12-1(b), was one of the enumerated offenses listed in N.J.S.A. 2C:44-3(d), and reasoned the State's evidence is "objectively verifiable, in that the defendant is objectively older than [eighteen] years old." Thus, the trial court granted the State's motion and increased defendant's sentencing range from a minimum of five and a maximum of ten years, to a twenty-year maximum sentence.

The trial court moved on to consider an appropriate sentence for defendant, hearing arguments from defense counsel and the State as to the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b). Defense counsel requested the court impose the minimum mandatory sentence for gun possession, arguing mitigating factor fourteen applied because defendant is under twenty-six years old. The State maintained the trial court should give that factor "slight weight."

---

d. Second offender with a firearm. The defendant is at least 18 years of age and has been previously convicted of any of the following crimes:. . . subsection b. of [N.J.S.A] 2C:12-1. . . . [(emphasis added).]

The State also argued the heart of the Graves Act, which is promulgated in N.J.S.A. 2C:43-6,[4] is to prevent future gun crime through general and specific deterrence, citing to New Jersey's strict gun laws, and defendant's prior conviction of a gun-related crime. The State argued for consecutive sentencing under Yarbough[5] asserting that aggravating factor three,[6] the risk of defendant committing another offense, applies and should be given great weight in light of defendant's two prior handgun convictions. As to aggravating factor six,[7] prior criminal record and the seriousness of the offenses, the State argued the trial court should also give this factor great weight because defendant was on probation while he committed the offenses leading to his prior convictions. As

---

[4]  The Graves Act imposes a mandatory minimum term of imprisonment and parole ineligibility on defendants convicted of certain predicate crimes committed while in possession of a firearm. N.J.S.A. 2C:43-6(c).

[5]  State v. Yarbough, 100 N.J. 627, 630 (1985).

[6]  See N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense[.]").

[7]  See N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted[.]").

A-3265-22

to aggravating factor nine,[8] the need to deter defendant and others, the State argued the trial court should send a message that unlawful possession of handguns should not be tolerated, even if the handgun was not actually used in this case.

The trial court considered "the facts of the case, the jury verdict, the personal characteristics of the defendant, and the criminal case history of the defendant," finding aggravating factor three, the risk defendant will commit another offense, applies. The trial court found defendant "was given an ample opportunity to change his ways and then, unfortunately, was found, a couple years later, in possession of another weapon." This rationale also formed the predicate for the trial court's finding of aggravating factor nine, reasoning the sentencing "will [also] send a message to the community in general to deter the illegal possession of a weapon . . . ."

The court also found aggravating factor six established in the record based on the extent of defendant's prior criminal record, as well as the seriousness of the offense under the Graves Act. The trial court also applied mitigating factor

---

[8] See N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law[.]").

fourteen,[9] because defendant was twenty-four years old at the time of the offense.

The trial court found "the aggravating factors clearly outweigh the mitigating factors and that the sentence imposed should reflect that. . . ." The trial court sentenced defendant to an extended term of thirteen years' incarceration with five years of parole ineligibility on count two in the first indictment, and a four-year sentence on the hindering count in the first indictment, to be served concurrent to a ten-year sentence with a five-year period of parole ineligibility on count one of the second indictment.

Defendant appealed, raising the following points for our consideration:

POINT I

REVERSAL IS REQUIRED BECAUSE THE [S]TATE FAILED TO MEET ITS BURDEN OF PROVING THAT TINTING ON THE FRONT SIDE WINDOWS INHIBITED THE OFFICER'S ABILITY TO CLEARLY SEE INSIDE DEFENDANT'S VEHICLE

POINT II

REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ISSUED AN INADEQUATE LIMITING INSTRUCTION REGARDING HOW TO CONSIDER

---

[9] See N.J.S.A. 2C:44-1(b)(14) ("The defendant was under [twenty-six] years of age at the time of the commission of the offense.")

TESTIMONY IMPLICATING DEFENDANT IN AN UNRELATED ROBBERY

POINT III

RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT IMPERMISSIBLY DOUBLE-COUNTED AND USED THE SAME CONVICTION AS JUSTIFICATION FOR THE EXTENDED TERM AND FOR AGGRAVATING FACTORS [THREE], [SIX], AND [NINE]

We consider defendant's arguments in turn.

II.

A.

Our deferential standard of review of a trial court's ruling on a motion to suppress is clearly proscribed in prevailing case law. State v. Goldsmith, 251 N.J. 384, 398 (2022). We "'must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.'" Ibid. (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). We will not disturb the trial court's factual findings unless they are "so clearly mistaken," that the "interests of justice demand intervention and correction." Ibid. (internal quotation marks omitted) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, the trial court's legal conclusions and its perspective of "the consequences that flow from established facts," are reviewed

11                                                          A-3265-22

under the de novo standard. Ibid. (internal quotation marks omitted) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

B.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right of people to be secure against unreasonable searches and seizures and "'impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions.'" Gamble, 218 N.J. at 425 (quoting State v. Maristany, 133 N.J. 299, 304 (1993)); U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.

Our Supreme Court held "[a]n investigatory stop or detention is constitutional only if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v. Elders, 192 N.J. 224, 247 (2007) (internal quotation marks omitted). "An officer may stop a motor vehicle only upon articulable and reasonable suspicion that a criminal or motor vehicle violation has occurred." State v. Atwood, 232 N.J. 433, 444 (2018) (internal quotation marks omitted). "The State must show the stop was based on specific and articulable facts which, taken together with rational inferences from those

facts, give rise to a reasonable suspicion of criminal activity." State v. Alessi, 240 N.J. 501, 518 (2020) (internal quotation marks omitted).

Reasonable suspicion "requires 'some minimal level of objective justification for making the stop.'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)). "[A]n investigative detention 'may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch.'" State v. Chisum, 236 N.J. 530, 546 (2019) (quoting State v. Coles, 218 N.J. 322, 343 (2014)).

"'The suspicion necessary to justify a stop must not only be reasonable, but also particularized.'" State v. Smith, 251 N.J. 244, 258 (2022) (quoting State v. Scriven, 226 N.J. 20, 37 (2016)). It "is a highly fact-intensive inquiry that demands evaluation of 'the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" State v. Nyema, 249 N.J. 509, 528 (2022) (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)); see also State v. Stovall, 170 N.J. 346, 363 (2002) (explaining the trial court considers an officer's training and experience in its totality of the circumstances analysis).

In State v. Smith, 251 N.J. at 252, the Court considered "whether a purported violation of N.J.S.A. 39:3-74[10] based on tinted windows justified an investigatory stop of a motor vehicle." The Court held "that reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car." Id. at 253.[11]

Here, the suppression hearing record establishes no error in the trial court's finding that Soulias had "articulable and reasonable suspicion that a . . . motor vehicle violation . . . occurred." See Atwood, 232 N.J. at 444. The trial court's determination on this issue is underpinned by Soulias's credible

---

[10] N.J.S.A. 39:3-74 states in pertinent part:

> No person shall drive any motor vehicle with any sign, poster, sticker or other non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the commissioner.

[11] Although Smith was decided by the Court two years after defendant's arrest, we have determined retroactive application was appropriate when relying on a violation of N.J.S.A. 39:3-74 as a basis for the officer's reasonable suspicion to execute an investigatory stop of a vehicle. See State v. Haskins, 477 N.J. Super. 630, 644 (App. Div. 2024).

testimony he could not see the driver of the Suburban as the vehicle passed him on Route 18 because the passenger side window was "completely tinted." Soulias's credible observations comport with Smith, because the evidence presented at the suppression hearing established the Suburban's windows were "so darkly tinted [he could not] clearly see people or articles within the [Suburban]." See Smith, 251 N.J. at 253. That Soulias was only able to observe tinting on the front passenger side window does not vitiate his reasonable suspicion to stop the vehicle, as the statute prohibits tinting of "front side windows."

C.

We are unconvinced the trial court's jury instructions regarding the uncharged robbery raised by defense counsel were erroneous.

The Court has stated that "'[t]he proper standards of review of jury instructions are well-settled: if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error . . . .'" State v. Cooper, 256 N.J. 593, 607 (2024) (quoting Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018)). In considering a late claim of error in a jury instruction, plain error requires demonstration of "'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to

justify notice by the reviewing court and to convince the court that. . . the error possessed a clear capacity to bring about an unjust result.'" State v. Singleton, 211 N.J. 157, 182-83 (2012) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

In reviewing for plain error, we "must not look at portions of 'the charge alleged to be erroneous in isolation; rather, the charge should be examined as a whole to determine its overall effect . . . .'" State v. McKinney, 223 N.J. 475, 494 (2015) (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)); see also State v. Smith, 322 N.J. Super. 385, 400 (App. Div. 1999) ("In deciding whether a jury instruction is erroneous, it must be considered in the context of the entire charge."). "The effect of the challenged 'charge must be evaluated in light of the totality of the circumstances.'" State v. Rochat, 470 N.J. Super. 392, 456 (App. Div. 2022) (quoting State v. DiFrisco, 137 N.J. 434, 491 (1994)).

Here, the trial court's jury instructions as to the jury's consideration of the uncharged robbery were entirely adequate when viewed under the plain error standard. During the redirect of Soulias, the trial court sua sponte instructed the jury without objection to disregard discussion of the robbery in determining defendant's guilt or innocence in this trial. Instead, the trial court explicitly

instructed the jury that the testimony may be considered in evaluating the context of the officers' testimony. See McKinney, 223 N.J. at 494 (explaining both parties in this case also did not object to the jury instruction provided at trial).

We are unconvinced the trial court erred in failing to advise the jury it could consider the evidence as to the officer's "state of mind," since the final jury charge addressed the jury's fact-finding and credibility determinations, which was substantively the same. The trial court was explicit in that the jury was not to consider the evidence to determine whether defendant was guilty of the crimes charged, then proceeded to outline the factors the jury might use to determine witness credibility.

Concluding the trial court's jury instructions were not "clearly capable of producing an unjust result," we decline to reverse defendant's convictions. See Cooper, 256 N.J. at 608 (internal quotation marks omitted). While we recognize the uncontroverted fact that the uncharged robbery was injected into the trial by defense counsel, we need not reach the State's arguments on invited error.

## D.

We discern no error in defendant's sentence, unconvinced the trial court improperly double-counted defendant's prior aggravated assault conviction as

the basis for an extended term under N.J.S.A. 2C:44-3(d), while also considering aggravating factor six based on defendant's prior criminal history.

We review a sentence under the abuse of discretion standard and affirm the sentence imposed by the trial court unless "'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)); see also State v. Miller, 237 N.J. 15, 28 (2019) (explaining we review a trial court's sentencing determination under the abuse of discretion standard). We may not substitute our judgment for that of the sentencing court, provided that the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record, and properly balanced . . . ." State v. Case, 220 N.J. 49, 65 (2014).

Once a sentencing court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "'may impose a term within the permissible range for the offense.'" State v. Morente-Dubon, 474 N.J. Super. 197, 208 (App. Div. 2022) (quoting State v. Bieniek, 200 N.J. 601, 608 (2010)).

When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the

time of sentence . . . ." N.J.S.A. 2C:44-5(a).  "A sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case" addressing overall fairness, State v. Cuff, 239 N.J. 321, 348, 352 (2019), "to 'foster[] consistency in . . . sentencing in that arbitrary or irrational sentencing can be curtailed and, if necessary, corrected through appellate review.'" State v. Torres, 246 N.J. 246, 272 (2021) (alteration in original) (quoting State v. Pierce, 188 N.J. 155, 166-67 (2006)).

An extended term may be imposed under N.J.S.A. 2C:44-3(d) when a defendant was previously convicted of one of the statutorily enumerated offenses under the Graves Act.  We are unpersuaded that defendant's extended term was improper since the State met its burden to establish defendant is a persistent and second offender.  See State v. Irrizary, 328 N.J. Super. 198, 202 (App. Div. 2000) (explaining the State has the burden to establish the defendant's eligibility for an extended sentence by a preponderance of the evidence).  The record shows defendant was previously convicted of N.J.S.A. 2C:12-1(b)(2), aggravated assault with a deadly weapon, one of the predicate crimes eligible for an extended term under the Graves Act.

We are unconvinced defendant's sentence requires reversal under State v. Dunbar, 108 N.J. 80, 88 (1987) ("[w]e shall not . . . deal with extended terms

19

for Graves Act offenses.") and State v. Vasquez, 374 N.J. Super. 252, 267 (App. Div. 2005) (referring to the defendant's prior conviction related to distribution of controlled dangerous substances). Rather, our decision in State v. McDuffie, 450 N.J. Super. 554 (App. Div. 2017), guides our determination. There, we rejected the defendant's argument the trial court impermissibly double-counted his criminal record when it granted the State's motion for an extended term, while also finding aggravating factor six, "which considers the extent and seriousness of defendant's prior record." Id. at 576. Here, as in McDuffie, "the trial judge was not . . . required to ignore the extent of [defendant's] criminal history when considering the applicable aggravating factors." Id. at 577.

We also discern no error in sentencing since the record shows the trial court explained why it imposed concurrent sentences after weighing the aggravating and mitigating factors. See Cuff, 239 N.J. at 348 ("A sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case . . . ."); Torres, 246 N.J. at 268 (concluding the trial court must offer "explicit statement[s]" to justify the sentence's "overall fairness" and its imposition of a concurrent sentence). We conclude the trial court did not abuse its discretion in applying the extended sentencing term nor did it err in its weighing of the aggravating and mitigating factors since its decision was

"supported by competent, credible evidence in the record."  See Case, 220 N.J. at 65; see also Miller, 237 N.J. at 28.

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3265-22